Odie INGRAM et al., Plaintiffs-Appellees,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant-Appellant.

No. 76–1346.

United States Court of Appeals, Fifth Circuit.

Feb. 25, 1977.

Rehearing Denied April 7, 1977.

Wayman G. Sherrer, U. S. Atty., Birmingham, Ala., Rex E. Lee, Asst. Atty. Gen., Civ. Div., Dept. of Justice, Washington, D. C., Mark H. Gallant, U. S. Dept. of Justice, App. Section, Washington, D. C., William Kanter, Atty., Civ. Div., App. Section, Dept. of Justice, Washington, D. C., for defendant-appellant.

R. Michael Booker, Birmingham, Ala., for E. W. Williams.

Charles T. Clark, Birmingham, Ala., for H. Baskin and others.

Walter W. Furner, Bessemer, Ala., for F. Eatmon and others.

E. Gail Falk, Charleston, W. Va., for amicus.

Before GEWIN, MORGAN and FAY, Circuit Judges.

FAY, Circuit Judge:

This is an appeal by the Secretary of Health, Education and Welfare from an order of remand for further consideration of claims for disability benefits for thirteen coal miners who filed claims under the Black Lung Benefit Act of 1972, 30 U.S.C. § 901 *et seq.* (1970). Part B of the Act establishes a program for the payment of benefits by the federal government to coal miners or their survivors who meet the eligibility requirements of the Act and regulations promulgated thereunder. The claimants herein submitted their applications for disability benefits under the Act to the Department of Health, Education and Welfare on or before June 30, 1973—the date on which authority to administer such claims was transferred from the Secretary of Health, Education and Welfare to the Secretary of Labor [1]—and were denied benefits. In all but one of these thirteen cases the Secretary of Health, Education and Welfare refused to consider medical evidence obtained after June 30, 1973 insofar as that evidence purported to establish the existence of disability from the disease at any time.[2] The Appeals Council upon its review of the Administrative Law Judge's decision adopted it as the final decision of the Secretary of Health, Education and Welfare.

The claimants then filed suit in the district court where the Secretary's decision was reversed and remanded. In the district court's order of December 5, 1975, it stated " . . . that the Secretary of Health, Education and Welfare has jurisdiction to determine cases filed, i.e. administratively initiated, prior to June 30, 1973." The lower court also held that " . . . [t]he claimant need not show disability on or before June 30, 1973. It is sufficient to vest jurisdiction with the Secretary . . that he show his claim was filed prior to that date."

The issues on appeal are:

1. Does the Act (Part B) not only require the filing of a claim prior to June 30, 1973, but also the proof of total disability occurring *on or before* June 30, 1973? The district court answered no. We disagree and modify that decision.

2. Because the Secretary has conceded that any post-June 30, 1973 medical evidence of disability may be considered as evidence which relates back to disability claimed to exist *on or before* June 30, 1973, was the district court correct in remanding these cases to the Secretary for further consideration of the claims appealed herein? We answer yes and affirm that decision with respect to all claimants.[3]

It is not necessary that we consider the factual basis for each claim to answer the jurisdictional or remand issues. The district court looked at and we need only look at the fact that in each of the remaining

---

1. 30 U.S.C. § 924(b).

2. In the administrative hearing of the claim of Earl W. Williams the Administrative Law Judge reviewed *all* the medical evidence of record and determined that Williams was entitled to benefits under the Act. However, the Appeals Council, on its own motion, reviewed this decision and reversed, ruling that Williams was not entitled to black lung benefits because the evidence did not show disability due to pneumoconiosis prior to June 30, 1973. It is not clear from the record on appeal whether all the evidence in each of the other claimants' cases was considered by the Administrative Law Judges. For purposes of this decision we will assume that evidence obtained after the cut-off date of June 30, 1973 which might relate back to that date was not considered by the Administrative Law Judges.

3. The claim of Williams was granted by the Administrative Law Judge in a very brief opinion (R. Volume II, p. 27.) Neither that opinion nor the record of the hearing before the Administrative Law Judge indicate *his* determination of the date of disability of Earl Williams. Even though Williams had a hearing in which all evidence was considered there must be an adjudication by the Administrative Law Judge of the date of disability to invoke or extinguish jurisdiction. Therefore we find that the claim of Earl Williams must also be remanded to the Administrative Law Judge for this determination. Then and only then will this claim be ripe for review by the Appeals Council and subsequently the District Court.

twelve claims[4] the Administrative Law Judge and the Appeals Council refused to consider evidence obtained after June 30, 1973.

The law providing benefits for disability due to pneumoconiosis (black lung disease) was developed by Congress through the passage of two statutes. The first was the Coal Mine Health and Safety Act, Pub.L. No. 91–173, 30 U.S.C. § 801 *et seq.* (1970), passed in 1969. To further expedite the procedures for applying for and collecting claims for disability Congress passed the Black Lung Act of 1972 which provided in part:

.  .  . It is, therefore, the purpose of this subchapter to provide benefits, in cooperation with the States, to coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to such disease or who were totally disabled by this disease at the time of their deaths; and to ensure that in the future adequate benefits are provided to coal miners and their dependents in the event of their death or total disability due to pneumoconiosis. 30 U.S.C. § 901 (Supp. 1975).

In particular Congress indicated its intent in the Senate Report on the bill:

Accordingly, the Committee expects the Secretary to adopt such interim evidentiary rules and disability evaluation criteria as will permit prompt and vigorous processing of the large backlog of claims consistent with the language and intent of these amendments. S.Rep. No. 92–743, 92nd Cong., 2d Sess. (1972), U.S. Code Cong. & Ad.News, pp. 2322–23.

Under Part B of the Black Lung Act the program established by Congress is administered by the Secretary of Health, Education and Welfare. 30 U.S.C. § 921–925. The United States government pays lifetime benefits to the claimants who file before June 30, 1973, and establish permanent disability existed prior to that date. 30 U.S.C. §§ 923(a) and 924(b). These same claimants may take advantage of the inter-

im presumptions of disability made available to them in 20 C.F.R. § 410.490. Part B is only an interim program. For claims filed after January 1, 1974, we must look to Part C. The claims under Part C are filed with the Secretary of Labor pursuant to applicable State workmen's compensation laws where the Secretary of Labor finds that these state laws provide adequate coverage for the miners. 30 U.S.C. § 931. Where there is not adequate coverage under state law the mining companies must pay the benefits. 30 U.S.C. § 933(a). For the period between June 30, 1973 and January 1, 1974 the Secretary of Labor was required to administer the claims filed. 30 U.S.C. § 925. The United States government would pay these claims until December 31, 1973 (30 U.S.C. §§ 924(b) and 925(a)(1) ) at which time the claims would be paid by the mine owners or the states under certified workmen's compensation programs as mentioned above.

■ The district court below held that as long as the claim was filed with the Secretary of Health, Education and Welfare before July 1, 1973 then any evidence of disability existing at any time is admissible. We cannot agree with this conclusion. Judge Edwards of the Sixth Circuit set forth reasons for finding that any proof of disability must show the disability existed on or before June 30, 1973. Three of those reasons are:

1. Congress employed that date as the date of limitation for filing claims before the Secretary of Health, Education and Welfare. It also provided for all subsequent claims to be determined and paid by either the Department of Labor or state workmen's compensation systems under procedures established by them. 30 U.S.C. §§ 925, 931 (Supp.1975).

2. Congress authorized and directed the Secretary of HEW to "make payments of benefits in respect of total disability of any miner due to pneumoconiosis .  .  . ." 30 U.S.C. § 921(a) (Supp.1975). Congress further authorized the Secre-

---

4. We do not include the claim of Earl Williams.

tary "by regulation [to] prescribe standards for determining for purposes of subsection (a) of this section whether a miner is totally disabled due to pneumoconiosis . . . ." 30 U.S.C. § 921(b) (Supp.1975). It was under authorization of these two subsections that the Secretary promulgated the now disputed regulation 20 C.F.R. § 410.490 (1975). We have read the language and interrelationship of these subsections and the disputed regulation as lending strong support by implication to the Secretary's interpretation that the total disability (which is the basis for any payment of benefits under this section) must be proved to have existed within the period of the Secretary's responsibility—on or before June 30, 1973.

3. In debate on the floor of the Senate, Senator Williams, who was floor manager of the 1969 Act, said:

> The Senate conferees had some degree of success in getting the House to recede from full Federal funding and complete State exclusion from the disability benefits program. I say some degree of success. Under the House amendment the Federal Treasury would have borne the responsibility for claims filed within seven years. Although the House would not completely accede to the Senate provision, it did agree to a program under which the Federal Government would accept the burden *for the 50,000 miners who have already been disabled and are no longer employed* or should no longer be forced to struggle through another day's work in mines.

> Miners or widows filing claims within the first two years would be paid benefits by the Federal Government at an average of less than $50 a week. *For persons disabled thereafter,* the burden would fall on the State Workmen's compensation program, unless the State refused to accept the responsibility. If the State chooses not to fulfill this obligation to the disabled coal miners, the employers would be required to accept the obligation in ac-

cordance with the procedures of the Longshoremen's and Harbor Worker's Compensation Act. I believe this is a fair and responsible provision. . . Hearings before the Subcommittee on Labor of the Senate Committee on Labor and Public Welfare on S. 2675, S. 2289, H.R. 9212, 92nd Cong. 1st and 2nd Sess. (1971–1972), at 369.

The portions of this statement which are italicized above appear to as (sic) come closer to explaining Congressional intent as to when total disability must be established than any other expression in the legislative history.

*Begley v. Mathews,* No. 75–2472, 544 F.2d 1345 (6th Cir. 1976).

For these reasons we find that the statutes require both the filing of a claim prior to June 30, 1973 and proof (no matter when obtained) of total disability occurring on or before June 30, 1973 to vest jurisdiction with H.E.W. *Begley v. Mathews,* No. 75–2472, 544 F.2d 1345 (6th Cir. 1976); *Collins v. Weinberger,* 401 F.Supp. 377 (W.D.Va. 1975).

Although the court below incorrectly decided the extent to which medical evidence obtained after June 30, 1973 could be used, it did properly remand the claims back to the administrative level. The Secretary has apparently conceded that the Administrative Law Judge can and should consider all evidence which goes to the question of disability on or before June 30, 1973 which is what we find is the scope of the statute. Because the Administrative Law Judge did not consider all the evidence presented by the remaining twelve claimants, it is necessary that these claims be remanded for consideration of that evidence. *Begley, supra; Collins, supra.*

■ Appellees have suggested that the Secretary be estopped from denying their claims because the claimants relied to their detriment on the Act and existing regulations and they " . . . *were never given notice by the Secretary that if they did not establish entitlement to benefits before July 1, 1973, they would have to file new*

claims with the U. S. Department of Labor." (Brief in Support of Appellees Odie Ingram, et al. p. 13). In particular appellees contend that the Secretary is estopped from applying the requirements of 20 C.F.R. § 410.226(b) because it was promulgated seventeen months after July 1, 1973. We cannot agree. Our decision in this case is based on the black lung statutes and the intent of Congress to extinguish jurisdiction by the Secretary of Health, Education and Welfare on a date certain (June 30, 1973). 30 U.S.C. §§ 925, 931 (Supp.1975).

For claimants who filed their applications before July 1, 1973, to recover benefits, they must prove that they were totally disabled before July 1, 1973. Evidence obtained at any time may be used but it must relate back so as to prove that the disability existed before July 1, 1973.

As stated in *Begley, supra*:

We deal here with a progressive disease. Thus where there were studies on or before June 30, 1973, and after June 30, 1973, and the latter studies show marked deterioration in breathing capacity exceeding the requirements set out in 20 C.F.R. § 410.490, application of the presumption depends upon whether or not by mathematical probabilities and relevant medical opinion the minimum requirements needed for application of the presumption, as set out in 20 C.F.R. § 410.490, had been present on or before June 30, 1973.

Having established these requirements we affirm the district court's remand to the Administrative Law Judge, albeit with different guidelines.