James D. BACK, Plaintiff-Appellant,

v.

Joseph A. CALIFANO, Jr., Secretary of
Health, Education and Welfare,
Defendant-Appellee.

No. 77–3139.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 13, 1978.

Decided March 5, 1979.

Frank J. Neff, Barkan, Barkan & Neff, Columbus, Ohio, for plaintiff-appellant.

James C. Cissell, U. S. Atty., Cincinnati, Ohio, Joseph E. Kane, II, Asst. U. S. Atty., Columbus, Ohio, for defendant-appellee.

Before EDWARDS, Chief Judge, and WEICK, Circuit Judge, and LAWRENCE *, Senior District Judge.

WEICK, Circuit Judge.

Plaintiff-appellant Back has appealed to this Court from an order of the District Court affirming the denial by the Secretary of Health, Education and Welfare of his claim for black lung benefits. On appeal he submits that the decision of the Secretary is not supported by substantial evidence. He next contends that under *Begley v. Mathews*, 544 F.2d 1345 (6th Cir. 1976), *cert. denied*, 430 U.S. 985, 97 S.Ct. 1684, 52 L.Ed.2d 380 (1977), certain 1975 evidence relates back to establish total disability due to pneumoconiosis existing on or before the June 30, 1973 date for establishing such total disability. He further contends that even if he is not entitled to benefits under *Begley,* he is entitled to an award of benefits under the most recent supplements to the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 801 *et seq.*, contained in the Black Lung Benefits Reform Act of 1977, Pub.L. No. 95–239, 92 Stat. 95, signed into law March 1, 1978, and regulations promulgated thereunder which were adopted by the Secretary of Labor on August 18, 1978. *See* 43 Fed.Reg. 36,772–831 (1978).

Back is a 56 year old former miner. He is married and has no dependent children. Between 1942 and 1958 he worked for the Westmoreland Coal Company. The Administrative Law Judge found that Back worked in the Westmoreland mine for thirteen and one-fourth years, of those sixteen years. This finding is unchallenged. He quit his work as a miner in 1958. At the time he quit there was no indication that he was suffering from black lung or any other disease; nor was he disabled in any respect. In fact, from 1959 to 1972 Back worked for a local company in a warehouse as a packer of merchandise for shipment to retail outlets, and as a shipping and receiving clerk. In 1972 he suffered a heart attack and stopped working. On December 9, 1972, because he had applied for and obtained an award, he began receiving total and permanent disability Social Security benefits for arteriosclerotic heart disease. He did not file a claim for worker's compensation as this type of benefit is ordinarily awarded only for disability arising from physical injury sustained in the course of employment, as distinguished from disease which may be incurred by anyone irrespective of employment.

* The Honorable Alexander A. Lawrence, Senior District Judge, United States District Court for the Southern District of Georgia, sitting by designation.

Back filed a claim for benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended in 1972, on April 30, 1973. His application was denied initially and upon reconsideration.

Back requested a hearing before an Administrative Law Judge. A hearing was held on November 11, 1975, at which hearing he appeared and testified. The Administrative Law Judge denied benefits to Back. The Appeals Council affirmed on May 4, 1976.

On June 3, 1976 Back filed an action in United States District Court for the Southern District of Ohio, seeking a review of the Secretary's decision. The District Court held that the decision of the Secretary was supported by substantial evidence and denied Back's motion for summary judgment. We agree.

On appeal Back contends that he has presented sufficient medical evidence of lung disease existing on or before the June 30, 1973 deadline, to be entitled to a presumption of total disability due to pneumoconiosis under 20 C.F.R. § 410.490(b).[1] Because he worked for more than ten years in the Westmoreland mine, he submits that he also has the benefit of a presumption that his pneumoconiosis arose out of his employment at the mine under § 410.416.[2] He contends that he has presented sufficient medical evidence and that he should enjoy both the presumption that he is totally disabled due to pneumoconiosis and the presumption that his disabling pneumoconiosis arose out of his mine employment from 1942 to 1958.[3]

Judicial review of the Secretary's findings of fact is limited to whether there is substantial evidence to support such findings. 30 U.S.C. § 923(b); 42 U.S.C. § 405(g). *See, e. g., Beavers v. Secretary of HEW,* 577 F.2d 383 (6th Cir. 1978); *Hephner v. Mathews,* 574 F.2d 359 (6th Cir. 1978); *Stille v. Weinberger,* 499 F.2d 244 (6th Cir. 1974); *Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973); *Myers v. Richardson,* 471 F.2d 1265 (6th Cir. 1972); *Ross v. Richardson,* 440 F.2d 690 (6th Cir. 1971); *Ragan v. Finch,* 435 F.2d 239 (6th Cir. 1970); *Rose v. Cohen,* 406 F.2d 753 (6th Cir. 1969); *Lane v. Gardner,* 374 F.2d 612, 616

1. § 410.490 Interim adjudicatory rules for certain Part B claims filed by a miner before July 1, 1973, or by a survivor where the miner died before January 1, 1974.

. . . . .

(b) *Interim presumption.* With respect to a miner who files a claim for benefits before July 1, 1973, and with respect to a survivor of a miner who dies before January 1, 1974, when such survivor timely files a claim for benefits, such miner will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of his death, or his death will be presumed to be due to pneumoconiosis, as the case may be, if:

(1) One of the following medical requirements is met:

(i) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis (see § 410.428);

§ 410.428 is reproduced in footnote 3, *infra.*

2. § 410.416 Determining origin of pneumoconiosis, including statutory presumption.

(a) If a miner was employed for 10 or more years in the Nation's coal mines, and is suffering or suffered from pneumoconiosis, it will be presumed in the absence of persuasive evidence to the contrary, that the pneumoconiosis arose out of such employment.

3. § 410.428 X-ray, biopsy, and autopsy evidence of pneumoconiosis.

(a) A finding of the existence of pneumoconiosis as defined in § 410.110(*o*)(1) may be made under the provisions of § 410.414(a) if:

(1) A chest roentgenogram (X-ray) establishes the existence of pneumoconiosis classified as Category 1, 2, 3, A, B, or C according to:

(i) The ILO–U/C International Classification of Radiographs of Pneumoconioses, 1971; or

(ii) The International Classification of Radiographs of the Pneumoconioses of the International Labour Office, Extended Classification (1968); or

(iii) The Classification of the Pneumoconioses of the Union Internationale Contra Cancer/Cincinnati (1968).

A chest roentgenogram (X-ray) classified as Category Z under the ILO Classification (1958) or Short Form (1968) will be reclassified as Category 0 or Category 1 and only the latter accepted as evidence of pneumoconiosis. A chest roentgenogram (X-ray) classified under any of the foregoing classifications as Category 0, including subcategories o/-, o/o, or o/1 under the UICC/Cincinnati (1968) Classification, is not accepted as evidence of pneumoconiosis.

(6th Cir. 1967). In *Begley, supra*, this Court held, after reviewing the legislative history of the Act, that under 20 C.F.R. § 410.490 the medical evidence must establish total disability due to pneumoconiosis on or prior to June 30, 1973, otherwise recovery of benefits will· not be allowed. Evidence of total disability due to pneumoconiosis, which disability occurred a relatively short time after June 30, 1973, may establish total disability as of such date. 544 F.2d at 1354. *See also Paluso v. Mathews*, 573 F.2d 4, 9–10 (10th Cir. 1978); *Arnold v. Secretary of HEW*, 567 F.2d 258 (4th Cir. 1977); *Humphreville v. Mathews*, 560 F.2d 347 (8th Cir. 1977); *Talley v. Mathews*, 550 F.2d 911, 917 (4th Cir. 1977); *Ingram v. Califano*, 547 F.2d 904 (5th Cir. 1977). Further, pneumoconiosis must be the primary cause of the total disability. *Gastineau v. Mathews*, 577 F.2d 356 (6th Cir. 1978).

Back contends that he had respiratory problems prior to the June 30, 1973 deadline for filing claims. He offered a letter dated March, 1975, written by his personal physician, which interpreted an x-ray taken four years earlier, in April, 1971, as showing pulmonary fibrosis. As hereinafter noted, this reading conflicts with other readings by medical experts.

Back also offered a series of x-rays taken between June, 1970 and October, 1973, which were diagnosed as showing a granulomatous lesion overlying the spine. Although there is no mention of lung disease in the reports associated with these x-rays, Back submits that there x-rays are highly probative evidence of significant lung disease existing prior to July 1, 1973.

The Administrative Law Judge found as a fact that Back was not totally disabled due to pneumoconiosis on or before June 30, 1973. He considered all of the evidence. The District Court found that the decision of the Secretary was supported by substantial evidence.

Assuming for the purpose of argument that Back was in fact disabled on June 30, 1973, the medical evidence on or about that date does not tend to support a finding that the disability was due to pneumoconiosis, as required. In December, 1972, seven months before the deadline, Back suffered a myocardial infarction and spent twenty days in the hospital. He had applied for and obtained an award and began, on December 9, 1972, receiving total and permanent disability insurance benefits because of arteriosclerotic, heart disease. During his stay in the hospital, an x-ray was interpreted by one Dr. Morrice as suggesting discoid atelectasis. This same x-ray was later interpreted by one Dr. Fox, who stated:

> There does not appear to be any evidence of any inhalation disease or other definite pulmonary lesion. CONCLUSION: Classification "0" without evidence of pneumoconiosis.

On May 14, 1973 Back's personal physician, one Dr. Grove, in a report, diagnosed Back as having a myocardial infarct and hypertensive cardiovascular disease. Several weeks later, on June 14, 1973, pulmonary studies were conducted on Back by one Dr. Hook. Dr. Hook noted:

> No significant restrictive or obstructive impairment [is] noted . . .. Values are within normal variables from predicted.

The report indicated that Back's cooperation was good.

In October, 1973, over three months beyond the deadline, a chest fluoroscopy given by one Dr. Rauchway showed "nodular lesion posteriorly located in the left lung with calcification present." On October 24, 1973 a chest x-ray was read by one Dr. Jacobson, an A reader, and by one Dr. Wheeler, a B reader, as negative for pneumoconiosis. To counter this lack of evidence of total disability due to pneumoconiosis existing on or about the June 30, 1973 deadline, Back offered the 1975-letter of his Doctor interpreting an April, 1971 x-ray as positive for pulmonary fibrosis and the series of x-rays from 1970 to 1973 which indicated a granulatomous lesion overlying the spine. The

Secretary's regulations[4] require a much stronger case, such as massive pulmonary fibrosis, to qualify for benefits.

There is no x-ray interpretation on or about the June 30, 1973 deadline which qualifies Back under § 410.428. The medical evidence taken within several months prior to the deadline, and within a relatively short time after the deadline, seem to indicate that Back was totally disabled from heart disease, not pneumoconiosis. Pneumoconiosis was not the primary cause of his disability. *Gastineau, supra,* at 358–59.

Back also offered the interpretations by two doctors of certain 1975 x-rays which tend to show possible simple pneumoconiosis. An x-ray taken on January 28, 1975 was interpreted by one Dr. Straughan as demonstrating emphysema, bronchitis, and "fibrosis on the basis of pneumoconiosis, simple, category 1/1P? Chest is otherwise normal." An x-ray taken on July 6, 1975 was interpreted by one Dr. Shiv Navani as demonstrating mildly emphysematous lungs, "consistent with changes of coal worker's pneumoconiosis of the type p1/0." He observed no acute focal pulmonary disease. Back submits that under this Court's decision in *Begley, supra,* this x-ray evidence should relate back and establish the existence of total disability due to pneumoconiosis on or before June 30, 1973, even though the x-rays were taken and interpreted nearly two years after the deadline. He notes that pneumoconiosis is a slowly progressive disease. He also notes that in 1975 his personal physician, Dr. Grove, commented on Dr. Straughan's diagnosis based on x-ray evidence and stated that "[f]ibrosis may be on the basis of pneumoconiosis and could be a factor in his rehabilitation [sic] . . . .."

In *Begley* this Court affirmed the decision of the District Court to remand to the Secretary for further consideration the claims of three miners. Each of the three miners had more than fifteen years service in the mines. Although none of the three offered sufficient evidence of total disability due to pneumoconiosis existing prior to the deadline, all three offered a ventilatory test which demonstrated that shortly after June 30, 1973 the miners qualified for benefits. This Court stated:

> As we see the matter, when a miner at a relatively short time after June 30, 1973 is found by ventilatory (or other) tests to be entitled to a presumption of disability from a disease known to be of a slowly progressive character, the possible effect of such "relevant evidence" should be carefully weighed to determine whether or not it establishes that his breathing capacity was below the standards set in 20 C.F.R. § 410.490 on or before June 30, 1973.

544 F.2d at 1354.

The Court further said, at 1355:

> The critical question . . . is whether within the reasonable probabilities of medical science the post-June 30, 1973 test showed such progression beyond one or more of the minimal requirements for triggering the 20 C.F.R. § 410.490 presumption as to warrant a finding of fact that one or more of such requirements had been met as of June 30, 1973.

The Administrative Law Judge found that post-1973 evidence offered by Back indicated a possible onset of simple pneumoconiosis a considerable length of time subsequent to June 30, 1973, but that there was no evidence that established that pneumoconiosis or presumed pneumoconiosis disclosing a disabling lung condition existed as of that date. The District Court held that Back's post-1973 evidence was too tentative and too remote to establish total disability

---

4. § 410.401   Scope of Subpart D.

. . .

(b) *"Pneumoconiosis" defined.*
"Pneumoconiosis" means:
(1) A chronic dust disease of the lung arising out of employment in the Nation's coal mines, and includes coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis, massive pulmonary fibrosis, progressive massive fibrosis, silicosis, or silicotuberculosis, arising out of such employment. For purposes of this subpart, the term also includes the following conditions that may be the basis for application of the statutory presumption of disability or death due to pneumoconiosis under the circumstances prescribed in section 411(c) of the Act;

. . .

due to pneumoconiosis existing on or before the June 30, 1973 deadline.

Neither of the 1975 x-ray interpretations plainly indicated even simple pneumoconiosis. Dr. Straughan's statement ended with a question mark; Dr. Navani's statement used the language "consistent with changes of . . . pneumoconiosis" which indicates uncertainty, instead of a firm statement, that simple pneumoconiosis was present. On March 31, 1975 Back's personal physician interpreted an April 1971 x-ray and the 1975 x-ray of Dr. Straughan both as showing pulmonary fibrosis, but, as indicated above, a stronger case such as massive pulmonary fibrosis is required. Back's personal physician also indicated that fibrosis *may be* on the basis of pneumoconiosis and *could be* a factor in Back's rehabilitation, but these statements are tentative, not firm. There is uncontroverted evidence that Back was totally disabled only from heart disease on June 30, 1973, and there is only inconclusive evidence, occurring and interpreted almost two years after the deadline, to indicate any possible pneumoconiosis existing at the time of the deadline.

■■■■ Back requests this Court to remand so that further evidence can be developed to show the existence of pneumoconiosis in 1975. Remand might be appropriate if the Secretary and the District Court had not considered the import of the post-1973 evidence. *See, e. g., Arnold, supra; Humphreville, supra* at 351; *Ingram, supra.* The Administrative Law Judge, however, considered this evidence and specifically stated that this evidence was probative ". . . but it was determined it indicated a possible onset of simple pneumoconiosis a considerable length of time subsequent to June 30, 1973. A live miner must establish that he was totally disabled prior to July 1, 1973. (20 C.F.R. § 410.226b; Social Security Rulings 74–32)." (App. 11). The District Court specifically cited the *Begley* case after its finding that this evidence was too tentative and too far removed in time from June 30, 1973 to entitle Back to the benefit of the interim presumption in 20 C.F.R. § 410.490(b)(1)(i).

We are bound by the findings of fact of the Secretary, affirmed by the District Court, because the findings were supported by substantial evidence, and are not clearly erroneous.

■■■ Back claims that he is entitled to benefits under the regulations under the 1977 Black Lung Benefits Reform Act. *See* 43 Fed.Reg. 36,772–831 (1978). This issue is not before us as we are not a fact finding body. Under the new Act and regulations all previously denied and pending Part B claims for benefits may be resubmitted to and reviewed by the Secretary of Health, Education and Welfare or the Secretary of Labor, at the claimant's option. 30 U.S.C. § 945, 20 C.F.R. §§ 727.101(a), (b)(2). *Treadway v. Califano,* 584 F.2d 48 (4th Cir. 1978).

If and when Back applies for relief under the 1977 Act and regulations issued thereunder, it may be necessary to add new parties and to have a new hearing as the new parties are entitled to due process of law.

The standard for establishing pneumoconiosis under these new regulations is less stringent than that under the old HEW regulations located in 20 C.F.R. § 410.101 *et seq.* Section 727.203(a)(4), for example, states that the documented opinion of a physician exercising reasoned medical judgment may establish the presumption of total disability due to pneumoconiosis for miners who have worked for ten or more years. This is a clear departure from the standards under the 1969 Act, as amended. After the decision is made on the merits under the 1977 Act, such decision may be reviewed in this Court by the party aggrieved.

Back further submits that recovery of black lung benefits, in addition to total disability Social Security benefits, is permissible under the statute as amended. This issue may be presented in proceedings under the 1977 Act.

Because we have decided that Back is not entitled to benefits under the rules in effect when his claim was filed, and that it would not be proper at this time for this Court to

award benefits to Back on appeal under the Black Lung Benefits Reform Act of 1977 and regulations promulgated thereunder, we need not reach this issue at this time.

*Dickson v. Califano,* 590 F.2d 616 (6th Cir. 1978, after the majority in the present appeal had arrived at their decision) is inapposite. The Administrative Law Judge in *Dickson* made a specific finding that "Dickson was suffering from a disabling, chronic lung condition," and that Dickson "had presented evidence from a Board certified physician who read X-rays as showing pneumoconiosis and found him totally disabled thereby."

In the case at bar the Administrative Law Judge made no such findings. No evidence was offered by Back showing pneumoconiosis, or that he was totally disabled thereby. The only evidence of total disability in the case at bar was that Back suffered arteriosclerotic heart disease; that he was totally and permanently disabled thereby; that he was awarded and is receiving total and permanent Social Security disability benefits therefor.

The judgment of the District Court is hereby affirmed.