**Earnest G. DOSS, Plaintiff-Appellant,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant-Appellee.**

No. 78–3025
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

July 6, 1979.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir. 1970, 431 F.2d 409, Part I.

Clark & James, Charles Tyler Clark, Howard P. Walthall, Birmingham, Ala., for plaintiff-appellant.

J. R. Brooks, U. S. Atty., Elizabeth E. Todd, Asst. U. S. Atty., Birmingham, Ala., for defendant-appellee.

Before RONEY, GEE and FAY, Circuit Judges.

PER CURIAM:

In this case we affirm a district court's decision upholding the decision of the Secretary of Health, Education and Welfare that Earnest G. Doss was not totally disabled due to actual or presumed pneumoconiosis arising out of his employment in the underground coal mines. The claim was made under the Black Lung Benefits Act of 1972. 30 U.S.C.A. § 901 et seq.

On January 24, 1973 the plaintiff filed his application for Black Lung benefits. His application was denied. His request for reconsideration was denied. A request for hearing was filed by plaintiff, and a hearing was held before the Administrative Law Judge of the Bureau of Hearings and Appeals. A decision was issued denying benefits. Upon review, the Appeals Council affirmed the decision of the Administrative Law Judge. This action was then commenced in the United States District Court for the Northern District of Alabama. By order dated March 4, 1976, the district court remanded the case to the Secretary for a consideration of "additional relevant medical evidence." The district court held the Secretary erred in requiring the claimant to show the condition for which he sought Black Lung benefits was present before July 1, 1973. The Secretary then filed an appeal to this Court. That appeal was stayed pending this Court's decision in *Ingram v. Califano,* 547 F.2d 904 (5th Cir. 1977). Following this Court's decision in *Ingram* on February 25, 1977 and its denial of rehearing on April 7, 1977, this Court ordered this case remanded to the Northern District of Alabama for disposition consistent with *Ingram.* By order dated June 16, 1977, the district court ordered the subject case remanded to the Secretary "for further proceedings consistent" with *Ingram.* In *Ingram* this Court held that the Secretary was indeed right in its position that the claimant must prove total disability on or before June 30, 1973, but that medical evidence subsequent to June 30, 1973 may be considered as evidence which relates back to pre-June 30, 1973 disability. The Secretary, upon remand, invited additional medical evidence, and such evidence was sent to the Secretary by the plaintiff. The Appeals Council issued a decision once again denying benefits. Thereafter a supplemental transcript was filed with the district court. In a Memorandum Decision and Order dated May 11, 1978, the district court affirmed the decision of the Secretary and this appeal followed.

In order to meet the eligibility requirements for miner's benefits, plaintiff had to establish that he is a miner, that he is totally disabled due to pneumoconiosis, that such condition existed on or before June 30, 1973, and that he filed a claim for benefits in accordance with the provisions of the Act. 20 C.F.R. § 410.201. The Secretary concedes that appellant is a miner and has properly filed an application for benefits. The sole issue is whether he is totally disabled due to pneumoconiosis and that such condition existed on or before June 30, 1973.

■ Pneumoconiosis is defined in the Act as a chronic dust disease of the lung arising out of employment in the coal mines. 30 U.S.C.A. § 902(b). Under 30 U.S.C.A. § 921(b), the Secretary is required to prescribe by regulation the standards for determining whether, *inter alia,* a miner is totally disabled due to pneumoconiosis.

The Secretary promulgated the regulations in 20 C.F.R. § 410.401 *et seq.* These regulations, together with the statutory standards and presumptions, establish the alternate tests for entitlement. *Statzer v. Weinberger,* 383 F.Supp. 1258 (E.D.Ky.1974).

The test on which plaintiff bases his claim is stated in the interim adjudicatory rules and establishes that a rebuttable presumption of total disability due to pneumoconiosis may be made where an x-ray or biopsy "establishes" the existence of pneumoconiosis. 20 C.F.R. § 410.490(b)(1)(i). The argument on this appeal boils down to whether the Appeals Council erroneously denied the claim on negative pre-June 30, 1973 x-rays in the face of post-June 30, 1973 x-rays which were minimally positive.

The x-ray evidence in this case reveals a February 24, 1973 x-ray which was initially read as positive. This same x-ray, however, was twice reread as negative. On May 24, 1973 Dr. Jay Gordonson, a specialist in radiology and a certified reader, interpreted the x-rays as negative, indicating no signs of pneumoconiosis. On July 7, 1973 Dr. Joseph Rosenstein, also a specialist in radiology and a certified reader, interpreted the x-rays as negative. This is the extent of the x-ray evidence on or before June 30, 1973, the jurisdictional cutoff date.

The next x-ray report, which was also considered by the Secretary, is dated November 25, 1974. This reading was also negative. Dr. Perry A. Morgan, Jr., a specialist in radiology, reported that there were no findings to indicate pneumoconiosis.

The remaining x-ray reports are dated April 17, 1975 and July 19, 1977. The 1975 x-ray was read by Dr. Juan Gonzalez, a specialist in radiology and a certified "A" reader. Dr. Gonzalez reported that the 1975 x-ray indicated simple pneumoconiosis. This x-ray was reread by Dr. A. David Russakoff, a specialist in internal medicine and a certified "B" reader, however, as showing "minimal evidence of pneumoconiosis" and classified as ⅓. The July 19, 1977 x-ray was taken by Dr. Russakoff and interpreted as indicating minimal evidence of pneumoconiosis.

The question before the district court was whether, in view of the three negative readings, the Secretary could conclude that the one positive interpretation of a post-June 30, 1973 x-ray was not controlling evidence of the pre-July 1, 1973 condition.

Plaintiff argues that the Secretary disregarded the post-June 30, 1973 x-rays and therefore failed to comply with the holding of *Ingram v. Califano,* 547 F.2d 904 (5th Cir. 1977). The record is clear, however, that the Secretary considered that evidence as well as the evidence prior to June 30, 1973. In essence, plaintiff asserts that *Ingram v. Califano, supra,* requires that the Secretary give the same weight to all x-rays despite their proximity to the jurisdictional cutoff date. While *Ingram* states that evidence obtained at any time *may* be used, it specifically states that such evidence "must relate back so as to prove that the disability existed before July 1, 1973." 547 F.2d at 908.

We agree with the several reasons argued in the Secretary's brief as to why the Secretary cannot be reversed on the decision that the positive interpretations of x-rays on which plaintiff relies are not controlling. First, the April 1975 x-ray was taken nearly two years after the jurisdictional cutoff date. While it is clear that, for instance, an August 1973 x-ray would reflect a claimant's condition on July 1, 1973, the more distant in time an x-ray is from the cutoff date, the less probative it is of the claimant's condition at that time. Since medical evidence indicates that pneumoconiosis is a progressive disease (*see Ingram,* 547 F.2d at 908), it is reasonable for the Secretary to conclude that the evidence did not relate back nearly two years.

Second, the relation back concept is generally used to fill in gaps in the evidence. Here the record includes a negative x-ray reading in November 1974. Again, since pneumoconiosis is progressive, to relate the April 1975 positive reading before the November 1974 negative reading would require that the 1974 report be discredited. A claimant cannot logically have pneumoco-

niosis in June 1973 and not have pneumoconiosis in November 1974.

Third, the April 1975 x-ray described as showing "minimal" pneumoconiosis in mid-1975 would not necessarily suggest the existence of pneumoconiosis in mid-1973. On the other hand, if a claimant could establish complicated pneumoconiosis in 1975, arguably it would be reasonable to conclude that he had simple pneumoconiosis in 1973.

Plaintiff seeks support in the Secretary's regulations which classify x-ray readers by proficiency and indicate that an interpretation by a "B" reader shall be definitive. 42 C.F.R. §§ 37.51, 37.52.

Plaintiff seems to argue that since one "B" reader, Dr. Russakoff, stated that the 1975 and 1977 x-rays indicated minimal pneumoconiosis, the Secretary by his own regulations must disregard the two negative readings in 1973 and the negative reading in 1974. The regulation, however, was designed to resolve the problem when two readers read the same x-ray in different ways. The "B" reader's interpretation is final. The question in this case, however, is whether the Secretary is required to accept a positive reading of x-rays taken over two years after the cutoff date instead of x-rays taken before or in closer proximity to the time for disability. Interpretations of x-rays taken in 1975 and 1977 are not as probative of the plaintiff's condition in 1973 as are 1973 or 1974 x-rays, and the Secretary is not required to consider them so.

■ It is the function of the Secretary, and not the Court, to weigh and to resolve material conflicts in evidence. *Sullivan v. Weinberger*, 493 F.2d 855 (5th Cir. 1974), *cert. denied*, 421 U.S. 967, 95 S.Ct. 1958, 44 L.Ed.2d 455 (1975).

The function of this Court on review is not to try the matter *de novo* but to leave the findings of fact to the Secretary and to determine upon the whole record whether the Secretary's decision is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773 (4th Cir. 1972).

The plaintiff argues the case as if the Secretary rested his decision on negative x-ray evidence alone, in the face of the statutory presumption, *see United States Steel Corp. v. Gray*, 588 F.2d 1022 (5th Cir. 1979), and contrary to the policy of Congress as interpreted in *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). A quote from the Decision of Appeals Council is sufficient to show no error in this regard.

At the hearing held on December 3, 1974, the miner testified that he had worked for 27 years in coal mine employment and that this work ended in 1954 when the mine closed. Because he was age 42 at that time he could not obtain another mining job. From 1954 to 1967 he worked at a variety of jobs, such as work as a carpenter and a roofer. He stated that this work ended when he fell through a roof and broke both of his legs. He testified that following the accident he was unable to work because of his "breathing and being crippled." Thus, the miner continued to perform work as a carpenter and roofer long after he left his coal mine employment, and was able to continue this other employment until his leg injury. In view of the length of time since the miner was exposed to coal dust and this intervening other work, it is not reasonable to conclude that on June 30, 1973, the miner had pneumoconiosis arising out of the coal mine employment, particularly in light of the negative x-rays in 1973 and 1974. The other evidence, including the 1973 pulmonary studies, also shows no significant pulmonary impairment.

The district court did not err in finding that the final supplemental decision is supported by substantial evidence. The plaintiff has not persuaded us that the Secretary misapplied the law.

AFFIRMED.