820 F.2d 405
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
I.V. COMBS, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee,
 No. 86-5817.
 United States Court of Appeals, Sixth Circuit.
 June 9, 1987.
 
 Before KRUPANSKY and GUY, Circuit Judges, and GILMORE, District Judge.[1]
 PER CURIAM.
 
 
 1
 Plaintiff appeals from the Secretary's denial of black lung benefits. Since we find that substantial evidence supports the Secretary's decision, we affirm.
 
 I.
 
 2
 Combs, who was born in 1905, filed an application for black lung benefits on January 19, 1973. In order for a living miner to establish entitlement to black lung benefits under Part B of Title IV of the Act,[2] the miner must establish that he "has worked in underground coal mines for stated periods of time and is totally disabled because of pneumoconiosis...." Ansel v. Weinberger, 529 F.2d 304, 306 (6th Cir.1976). Combs pursued this claim as far as the Appeals Council and the claim was denied at all levels of review.
 
 
 3
 On October 7, 1976, Combs filed this action in district court where it was determined that the case should be remanded to the Secretary for the purpose of considering new 1975 medical evidence. Upon remand the claim was denied again. When the case returned to the district court, it was referred to a magistrate who recommended the claim be denied. On July 8, 1986, Judge Siler adopted the magistrate's report and recommendation and issued a judgment in favor of the Secretary.
 
 II.
 
 4
 It is undisputed that Combs has at least seventeen years of coal mine employment and that he last worked in the mines in 1969. He ceased employment altogether on November 19, 1973.
 
 
 5
 The intent of Congress in enacting the Federal Coal Mine Health and Safety Act of 1969 was to provide benefits to coal miners who were totally disabled by pneumoconiosis or to surviving dependents of miners whose deaths were due to that disease. 30 U.S.C. Sec. 901. The Act permits recovery upon a showing of actual total disability due to pneumoconiosis. 20 C.F.R. Sec. 410.410 (1985); Hill v. Califano, 592 F.2d 341 (6th Cir.1979).
 
 
 6
 The function of the court on review is not to try the matter de novo, but to leave the findings of fact to the Secretary and determine upon the record as a whole whether the Secretary's decision is supported by substantial evidence. The findings of the Secretary as to any fact shall be conclusive if supported by substantial evidence. Moore v. Califano, 633 F.2d 727 (6th Cir.1980); Back v. Califano, 593 F.2d 758 (6th Cir.1979). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389 (1971); Austin v. Weinberger, 402 F.Supp. 1198 (E.D.Tenn.1974), aff'd, 524 F.2d 1405 (6th Cir.1975); Futernick v. Richardson, 484 F.2d 647 (6th Cir.1973); Moore v. Califano, 633 F.2d 727 (6th Cir.1980). Plaintiff bears the burden of establishing his total disability. Id. at 729.
 
 
 7
 The Act also provides for certain presumptions which a miner may utilize in attempting to establish entitlement to black lung benefits. Since Combs concedes that some of these presumptions do not apply, we address only those which he claims are applicable.
 
 
 8
 20 C.F.R. Sec. 410.490 provides that if a living miner has at least ten years of coal mine employment and submits either x-ray proof of pneumoconiosis or qualifying pulmonary function studies, there is a rebuttable presumption that he is presumed to be totally disabled due to pneumoconiosis. Sec. 410.490(b); Haywood v. Secretary of Health and Human Services, 699 F.2d 277 (6th Cir.1983). This presumption may be rebutted by evidence that the miner is doing his usual coal mine work or comparable work, or other evidence establishes that he can do his usual coal mine work or comparable work. Sec. 410.490(c).
 
 
 9
 If a miner cannot establish entitlement to benefits under Sec. 410.490, he may still prove entitlement to benefits under the fifteen year rebuttable presumption created by 30 U.S.C. Sec. 921(c)(4). The regulation that implements Sec. 921(c)(4) is found at 20 C.F.R. Sec. 410.414(b). If a miner has fifteen years of coal mine employment, he may establish entitlement to benefits "if other evidence demonstrates the existence of a totally disabling chronic respiratory or pulmonary impairment" rebutted only by showing that the miner does not have pneumoconiosis or that his pneumoconiosis did not arise out of coal mine employment. 30 U.S.C. Sec. 921(c)(4); 20 C.F.R. Sec. 410.414(b)(2).
 
 
 10
 If a claimant is unable to prove entitlement to benefits after consideration of the ten and fifteen-year presumptions, he still may prove entitlement "if other relevant evidence establishes the existence of a totally disabling chronic respiratory or pulmonary impairment, and that such impairment arose out of employment in a coal mine." 30 U.S.C. Sec. 921(c)(4); 20 C.F.R. Sec. 410.414(c). The regulations also help define "other relevant evidence." It includes "[m]edical tests such as blood gas studies, electrocardiogram, pulmonary function studies or physical performance tests, and any medical history...." 20 C.F.R. Sec. 410.414(c) (1985).
 
 
 11
 In addition to the presumption, the Secretary also recognizes that because of the slowly progressive nature of the disease, post-jurisdictional date evidence may be relevant to the question of disability prior to June 30, 1973. Lawson v. Secretary of Health and Human Services, 688 F.2d 436 (6th Cir.1982); Begley v. Mathews, 544 F.2d 1345 (6th Cir.1976), cert. denied, 430 U.S. 985 (1977). The standard for weighing post-jurisdictional date evidence for the purpose of triggering the interim presumption requires a showing that the remote evidence indicates a worsening beyond the minimum interim criteria such as to raise a reasonable probability that the minimum criteria had been met on or before June 30, 1973. Begley, 544 F.2d at 1355.
 
 III.
 
 12
 The post-1973 evidence which Combs argues is relevant and determinative of disability consists of a September 8, 1975, report of Dr. Keith W. Cameron (December 28, 1974 examination); a report from a January 23, 1975, examination and an August 8, 1975, x-ray by Dr. W. Grady Stumbo; and a report of x-ray readings and a pulmonary function study done by Dr. Frank Varney on December 6, 1974. All of these reports if credited, provide some evidence of disability. However, the Secretary considered these reports and we find substantial evidence supporting the Secretary's decision to either reject some of these reports or to credit other evidence of record.
 
 The X-rays
 
 13
 A chest x-ray taken in March, 1973, was interpreted initially as negative by Dr. Emery Lane, a certified "A" reader. This x-ray was re-read in May, 1973, as negative by a certified "B" reader.[3]
 
 
 14
 In December, 1974, Dr. F.T. Varney, a certified "A" reader, interpreted an x-ray as positive for pneumoconiosis. In August 1975, Dr. W. Grady Stumbo, a certified "A" reader, also interpreted a chest x-ray of that date as positive for pneumoconiosis. The August, 1975, x-ray was interpreted only as stage 1/1q pneumoconiosis indicating an early stage in the progress of the disease at that time. Thus, the 1975 x-ray would not raise a reasonable probability that plaintiff had a severe respiratory condition that would have met the interim criteria on or before June 30, 1973, especially when compared with the negative x-ray of March, 1973.
 
 
 15
 Where there is a subsequent positive x-ray contradicted by a prior negative x-ray, the subsequent positive x-ray merely creates a conflict in the evidence which the Secretary may resolve by having a serial re-reading of all the available relevant x-rays.[4] Couch v. Secretary of Health and Human Services, 774 F.2d 163 (6th Cir.1985). Here, the Secretary had a serial re-reading of the x-rays by Dr. Harold Spitz, a certified "B" reader, who interpreted each x-ray as negative. It is also relevant that although Dr. Varney diagnosed 2/2 pneumoconiosis in December of 1974, Dr. Stumbo found only 1/1 pneumoconiosis in August of 1975.
 
 The Pulmonary Function Studies
 
 16
 Two pulmonary function studies were submitted that were done after the June, 1973, cut-off date. The readings of both studies would indicate a significant pulmonary deficit. The Secretary did not credit these studies, however, and we concur in that decision. Pulmonary function studies are only as good as the effort put into them by the person being tested. For that reason the regulations require that all readings be accompanied by a statement of a patient's effort and cooperation. This was not done here. The regulations also require that a ventilatory study be accompanied by the sperometric tracings. 20 C.F.R. Sec. 410.430. These post cut-off date studies were also deficient in that regard also. Dr. David Kerr found the December, 1974, study by Dr. Varney to be unacceptable due to Combs' poor and inconsistent effort.
 
 
 17
 Additionally, the December, 1974, and August, 1975, studies are arguably too remote to trigger the presumption. Elkins v. Secretary of Health and Human Services, 658 F.2d 437 (6th Cir.1981).
 
 IV.
 
 18
 We turn finally to Combs' claim that "other relevant evidence" established the existence of a totally disabling respiratory or pulmonary impairment. 20 C.F.R. Sec. 410.414(c) (1985). It is clear from the record that the medical evidence relating to the period prior to June 30, 1973 does not indicate a respiratory or pulmonary impairment of sufficient severity to be totally disabling.
 
 
 19
 As far as the post-1973 medical evidence, Dr. W.G. Stumbo examined Combs in September of 1975 and diagnosed obesity, hypertension, and mild heart disease as well as a respiratory condition. He gave no opinion as to whether Combs was disabled. Dr. Keith W. Cameron's September 8, 1975, report indicated that Combs had increasing shortness of breath for only the last two years. This is consistent with the testimony of Combs' wife at the September 12, 1975, hearing, who said that Combs had used a breathing spray for only the last two years. Thus, the medical report and the testimony of Combs' wife support the conclusion that Combs' breathing condition began to slowly worsen in September, 1973, after the cut-off date of June 30, 1973. Combs' EKG was suggestive of a chronic inferior myocardial infarction. Since Combs was seventy years old at the time of this physical examination, age alone would be a significant limiting factor. Dr. Cameron's report essentially was based on Combs' subjective complaints and concluded only that he could not do manual labor. Such a report does not establish disability for purposes of black lung benefits. Back v. Director, Office of Workers' Compensation, 796 F.2d 169, 171 (6th Cir.1986).
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 Honorable Horace W. Gilmore, United States District Court, Eastern District of Michigan, sitting by designation
 
 
 [2]
 Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. Sec. 801, et seq
 
 
 [3]
 Under the provisions of Sec. 37.51 (42 C.F.R. Sec. 3751(a) and (b)), readers certified by the Public Health Service are divided into two classes, "First" or "A" readers and "Final" or "B" readers, based on a progressive demonstration of proficiency in the classification of x-rays for pneumoconiosis. Those physicians certified as "B" readers have attained the highest possible rating a physician may obtain
 
 
 [4]
 A serial reading is a physician's sequential reading, in chronological order, of several chest x-rays of one individual, and is more conclusive than single isolated interpretations, because the physician has the opportunity to observe any change taking place due to a disease process