Dewitt D. HUMPHREVILLE, Appellee,

v.

F. David MATHEWS, Secretary of Health, Education and Welfare, Appellant.

Paul T. JAMES, Appellee,

v.

F. David MATHEWS, Secretary of Health, Education and Welfare, Appellant.

Clarence L. BRINEY, Appellee,

v.

F. David MATHEWS, Secretary of Health, Education and Welfare, Appellant.

Nos. 76–1875, 76–1884 and 76–1920.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1977.

Decided July 22, 1977.

Mary Gallagher, Appellate Sec., Civil Div., Dept. of Justice, Washington, D.C. (argued), for appellant; Rex E. Lee, Asst. Atty. Gen., Washington, D.C., Robert E. Johnson, U.S. Atty., Fort Smith, Ark., on brief.

Jim D. Spears, Fort Smith, Ark. (argued), for appellee; Hal W. Davis, Fort Smith, Ark., Jonah Ted Yates, Ozark, Ark., on brief.

Before HEANEY, ROSS and STEPHENSON, Circuit Judges.

HEANEY, Circuit Judge.

The Secretary of Health, Education and Welfare (HEW) appeals from orders remanding to the Secretary for further consideration the claims of three former coal miners for disability benefits under the Black Lung Benefits Act. 30 U.S.C. § 901 et seq. Each of the claimants submitted their claims for benefits before June 30, 1973—the date that authority to administer claims was transferred from the Secretary of Health, Education and Welfare to the Secretary of Labor. These consolidated appeals raise the issue of the proper use of medical evidence obtained after June 30, 1973, to support claims for benefits under Part B of the Act which is administered by the Secretary of Health, Education and Welfare. 30 U.S.C. §§ 921–925.

The present law providing benefits for disability due to black lung disease (pneumoconiosis) is a combination of statutes. The Coal Mine Health and Safety Act was passed in 1969. 30 U.S.C. § 801 et seq. The Black Lung Act was passed in 1972 to expedite the processing of claims. 30 U.S.C. § 901 et seq. The Senate report stated:

the Committee expects the Secretary to adopt such interim evidentiary rules and disability evaluation criteria as will permit prompt and vigorous processing of the large backlog of claims consistent with the language and intent of these amendments.

S.Rep. No. 92–743, 92nd Cong., 2d Sess. (1972), U.S.Code Cong. & Ad.News, p. 2322. Two separate benefit programs were established. Under Part B, a program was established for the payment of benefits, by the federal government, to coal miners or their survivors who filed claims before June 30, 1973, and who met the eligibility requirements of the Act and the regulations promulgated thereunder. The claimants, under Part B, could take advantage of the interim presumption of disability established in 20 C.F.R. § 410.490. Under Part C, claims filed after January 1, 1974, are administered by the Secretary of Labor and are paid through approved state workmen's compensation programs or by the mining companies. 30 U.S.C. §§ 931–941. A claim filed under Part C must be filed within three years of the last exposed employment in a mine. 30 U.S.C. § 932. The pulmonary function standards established under Part C are more stringent than the interim presumption established under Part B. *Compare* 20 C.F.R. § 410.426(b) *with* 20 C.F.R. § 410.490(b).[1]

Since each of the claims in question were filed prior to June 30, 1973, the claimants seek to invoke the more liberal interim presumption under Part B. By the terms of the regulation, 20 C.F.R. § 410.490(b), the interim presumption applies to all claims filed on or before June 30, 1973. However, the regulation does not establish the date by which the disability must have occurred in order for the claim to be evaluated under the interim standards. The District Court held that the claimant need not demonstrate that the onset of the disability occurred prior to June 23, 1973, and that the interim presumption applied as long as the claims were filed before the cutoff date. The claims were remanded and the Secretary was ordered to consider post-June 30, 1973 medical evidence in making its determination of whether the claimant was "en-

titled to benefits at any time prior to the final adjudication by the Secretary."

In making its decision, the District Court relied upon *Begley v. Weinberger,* 400 F.Supp. 901 (S.D.Ohio 1975). The Sixth Circuit subsequently modified this case upon appeal. *Begley v. Mathews,* 544 F.2d 1345 (6th Cir. 1976), *cert. denied,* 430 U.S. 985, 97 S.Ct. 1684, 52 L.Ed.2d 380 (1977). The Sixth Circuit held that the disability must be shown to exist on or before June 30, 1973, before the claimant is entitled to benefits under Part B of the Act. However, it held that medical evidence accumulated after June 30, 1973, is not to be disregarded. Since pneumoconiosis is a progressive disease, such evidence is relevant to the question of whether or not the disability was present prior to the cutoff date. The Sixth Circuit stated:

> The critical question in relation to this progressive, often deadly, disease is whether within the reasonable probabilities of medical science the post-June 30, 1973 test showed such progression beyond one or more of the minimal requirements for triggering the 20 C.F.R. § 410.490 presumption as to warrant a finding of fact that one or more of such requirements had been met as of June 30, 1973. *Begley v. Mathews, supra* at 1355.

The Fourth and the Fifth Circuits and the Secretary [2] have since adopted the position of the Sixth Circuit. *Talley v. Mathews,* 550 F.2d 911, 917 (4th Cir. 1977); *Ingram v. Califano,* 547 F.2d 904, 907 (5th Cir. 1977).

The following reasons have been given for finding that the onset of the disability must have occurred on or before June 30, 1973, before a claimant is entitled to benefits under Part B.

(1) Congress chose June 30, 1973, as the date by which claims must be filed with the Secretary of Health, Education and Welfare. After that date, responsibility for the

---

1. All claims filed between July 1, 1973, and December 31, 1973, were to be administered by the Secretary of Labor but paid by the United States. 30 U.S.C. § 925.

2. The Secretary has conceded that all evidence, including that obtained subsequent to June 30, 1973, should be considered with respect to whether or not the disability was present as of that date. *See Ingram v. Califano,* 547 F.2d 904, 907 (5th Cir. 1977).

program shifted to the Secretary of Labor. *Begley v. Mathews, supra* at 1352; *Ingram v. Califano, supra* at 906.

(2) The language and interrelationship of 30 U.S.C. § 921(a) and (b) and 20 C.F.R. § 410.490 lend

strong support by implication to the Secretary's interpretation that the total disability (which is the basis for any payment of benefits under this section) must be proved to have existed within the period of the Secretary's responsibility—on or before June 30, 1973.

*Begley v. Mathews, supra* at 1352; quoted in *Ingram v. Califano, supra* at 907.

(3) Congressional intent as to when the disability must be established is indicated by a statement made by Senator Williams, the floor manager of the 1969 Act.

The Senate conferees had some degree of success in getting the House to recede from the full Federal funding and complete State exclusion from the disability benefits program. I say some degree of success. Under the House amendment the Federal Treasury would have borne the responsibility for claims filed within 7 years. Although the House would not completely accede to the Senate provision, it did agree to a program under which the Federal Government would accept the financial burden for the 50,000 miners who have already been disabled and are no longer employed or should be no longer forced to struggle through another day's work in mines.

Miners or widows filing claims within the first 2 years would be paid benefits by the Federal Government at an average of less than $50 a week. For persons disabled thereafter, the burden would fall on the State workmen's compensation

program, unless the State refused to accept the responsibility. If the State chooses not to fulfill this obligation to the disabled coal miners, the employers would be required to accept the obligation in accordance with the procedures of the Longshoremen's and Harbor Worker's Compensation Act. I believe this is a fair and responsible provision.

Hearings before the Subcommittee on Labor of the Senate Committee on Labor and Public Welfare on S. 2675, S. 2289, H.R. 9212, 92d Cong., 1st and 2nd Sess. (1971–1972), at 369; cited by *Begley v. Mathews, supra* at 1352, and *Ingram v. Califano, supra* at 907.

▇▇ (4) Deference is to be accorded to the interpretation given to a statute by the federal agency charged with administering it. *Begley v. Mathews, supra* at 1352.[3] We agree with the reasons advanced and hold that for a claimant to be entitled to benefits under Part B of the Act, it must be shown that the disability occurred on or before June 30, 1973. Evidence obtained after that date, however, is relevant to the determination of when the onset of the disability occurred. Each of the cases must be considered separately because of differences in the administrative records.

### Humphreville

▇ Dewitt Humphreville filed for black lung disability benefits on August 16, 1972. Benefits were initially denied on June 11, 1973, and were again denied after reconsideration on November 25, 1973. He requested a hearing before an administrative law judge on the basis of the evidence in the file and waived his right to appear and give evidence. Benefits were again denied on

---

**3.** Social Security Ruling SSR 74–32 (November, 1974) provides that:

Where a coal miner files application prior to July 1, 1973, for black lung benefits pursuant to Part B of title IV of the Federal Coal Mine Health and Safety Act, as amended: *held*, the Social Security Administration, under authority delegated by the Secretary of HEW, has jurisdiction for paying Part B benefits provided all requirements for entitlement to these benefits are met prior to July 1,

1973, and *further held*, that where a miner filed an application prior to July 1, 1973, but all entitlement requirements are not met before that date the Social Security Administration does not have jurisdiction for paying Part B benefits.

We note, however, that we reject the Secretary's interpretation to the extent that the ruling implies that post-June 30, 1973 evidence will not be considered.

June 21, 1974, and this decision was affirmed by the Appeals Council on October 30, 1974.

Humphreville then filed an action in District Court seeking to review the final decision of the Secretary. On February 28, 1975, the District Court remanded the case to the Secretary to permit Humphreville to present additional medical evidence. After reviewing the additional medical evidence, the Appeals Council again denied benefits on February 26, 1976. Neither the pulmonary function study performed in 1973 or the one performed in 1975 satisfied the interim presumption. Even though an x-ray taken on January 17, 1975, showed a simple pneumoconiosis, an x-ray taken on May 4, 1973, was negative for pneumoconiosis. The Appeals Council reasoned that an x-ray taken on May 4, 1973, just two months before the June 30, 1973, cutoff date, was a better indication of the presence of pneumoconiosis as of the cutoff date than an x-ray taken nineteen months later. We have carefully reviewed the administrative record and are convinced that the Appeals Council adequately considered post-June 30, 1973 medical evidence in its decision of January 26, 1976. Accordingly, we remand the case to the District Court for a determination of whether the decision of the Secretary was supported by substantial evidence.

### James

■ Paul James filed for black lung disability benefits on August 5, 1971. Benefits were denied initially on October 6, 1971, and again after reconsideration on December 5, 1973. An administrative law judge again denied benefits after a hearing on September 23, 1974. The Appeals Council affirmed this decision.

James then filed an action in District Court seeking to review the decision. As in the other cases, the District Court remanded the case to the Secretary for the submission of additional medical evidence. Additional evidence was submitted, but the Appeals Council refused to make any judgment with respect to its validity "since the tests were conducted more than two years after jurisdiction of the black lung benefits program passed to the Department of Labor." Since the Appeals Council failed to consider and evaluate all the evidence presented, the case must be remanded to the Secretary. On remand, the Secretary shall consider all the evidence, including that obtained after June 30, 1973, in determining whether James is entitled to benefits under Part B of the Act.

### Briney

■ Clarence Briney filed for benefits on June 21, 1972. As in the other two cases, benefits were denied initially and after reconsideration. After a hearing, an administrative law judge found that Briney did not have pneumoconiosis and, thus, again denied benefits on August 8, 1974. Briney submitted additional evidence to the Appeals Council along with his request for review of the administrative law judge's decision. The Appeals Council affirmed the decision on March 10, 1975.

Briney then sought review of the decision in the District Court which ordered the cases remanded to the Secretary because the decisions of the administrative law judge and of the Appeals Council do not indicate whether proper consideration was given to post-June 30, 1973 medical evidence. The administrative law judge's decision of August 8, 1974, does refer to Briney's subjective complaints as well as to both pre- and post-June 30, 1973 medical evidence. The Appeals Council stated that it considered all evidence including the additional evidence presented to it as part of Briney's request for review. It is unclear the extent to which the Secretary considered the post-June 30, 1973 evidence as part of its decision. However, it also appears that none of the post-June 30, 1973 evidence established the presence of pneumoconiosis. Accordingly, we remand the case to the District Court for a determination of whether the Secretary's decision was supported by substantial evidence, including evidence obtained after June 30, 1973.