Joseph **PADAVICH**, Plaintiff-Appellant,

v.

David **MATHEWS**, Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 76–2061.

United States Court of Appeals, Eighth Circuit.

Submitted June 17, 1977.

Decided Aug. 24, 1977.

---

Paul F. Christoffers, Chariton, Iowa, for plaintiff-appellant.

Joseph S. Friedman, Atty., Office of Gen. Counsel, Dept. of H.E.W., Baltimore, Md. (argued), and Barbara Allen Babcock, Acting Asst. Atty. Gen., Washington, D.C., Paul A. Zoss, U.S. Atty., John M. Fitzgibbons and William D. Scherle, Asst. U.S. Attys., Des Moines, Iowa, and Joseph S. Friedman, Chariton, Iowa, on brief, for defendant-appellee.

Before MATTHES, Senior Circuit Judge, BRIGHT, Circuit Judge, and MILLER, Judge.*

MATTHES, Senior Circuit Judge.

Appellant, Joseph Padavich, was a coal worker for over thirty years, leaving the mines permanently in 1957. On November 29, 1972, he filed an application for black lung (pneumoconiosis)[1] compensation benefits under the Federal Coal Mine Health & Safety Act of 1969, as amended by the Black Lung Benefits Act of 1972, § 401, 30 U.S.C. § 901 *et seq.* (1970 & Supp. V 1975). His claim was denied at every administrative level. Following the final decision of the Secretary of Health, Education & Welfare, appellant brought this action in the United States District Court for the Southern District of Iowa seeking judicial review of the administrative determination, as provided for in 30 U.S.C. § 923(b) (1970 & Supp. V 1975).

Cross motions for summary judgment were filed in the district court. Upon consideration of the full administrative record, the court granted the Secretary's motion. We affirm.

The Federal Coal Mine Health & Safety Act, as amended, directs the Secre-

---

* The Honorable Jack R. Miller, Judge, U.S. Court of Customs and Patent Appeals, sitting by designation.

1. Coal workers' pneumoconiosis is a chronic respiratory ailment caused by the long-term inhalation of coal dust. *See generally Usery v.*

*Turner Elkhorn Mining Co.*, 428 U.S. 1, 6–8, 96 S.Ct. 2882, 2888–89, 49 L.Ed.2d 752 (1976); *Bozwich v. Mathews*, 558 F.2d 475, 476 n. 2 (8th Cir. 1977); S.Rep.No.743, 92nd Cong., 2nd Sess. (1972), *reprinted in* [1972] U.S.Code Cong. & Admin.News pp. 2305, 2309–10.

tary of Health, Education & Welfare to compensate any miner who can sustain the burden of proving (1) that he was totally disabled on or before June 30, 1973,[2] and (2) that the disability was due to pneumoconiosis. 30 U.S.C. § 921 *et seq.* (1970 & Supp. V 1975); *see Humphreville v. Mathews,* 560 F.2d 347 (8th Cir. 1977); *Bozwich v. Mathews, supra.* Congress has provided various statutory presumptions to aid a claimant in establishing that his disability is the result of pneumoconiosis,[3] but without a showing of *timely* and *total* disability there can be no compensation.

█ A miner is totally disabled within the meaning of the amended Act if he is prevented "from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which he previously engaged with some regularity and over a substantial period of time." 30 U.S.C. § 902(f) (Supp. V 1975), *quoted in Usery v. Turner Elkhorn Mining Co., supra* at 10, 96 S.Ct. at 2890. This basic test has been comprehensively delineated in the regulations promulgated by the Secretary. 20 C.F.R. §§ 410.401–410.490. Total disability may be shown by clinical or other medical evidence, subject to rebuttal by evidence that a claimant is able to be gainfully and comparably employed.

█ In the present case, the Secretary determined that appellant had not shown that he was totally disabled prior to the date when HEW's jurisdiction terminated. Thus, appellant was denied benefits. That decision must be upheld if supported by substantial evidence.[4] 42 U.S.C. § 405(g), incorporated by reference in 30 U.S.C. § 923(b) (1970 & Supp. V 1975); *Felthager v. Weinberger,* 529 F.2d 130, 131 (10th Cir. 1976). Mindful of the limited scope of our review, we turn to an examination of the facts.

The medical evidence is contradictory and inconclusive. Chest x-rays of appellant were taken in 1969 and 1972. The first set was negative. The second set was initially interpreted to indicate pneumoconiosis, but

**2.** This jurisdictional limitation results from a congressional division of responsibility for the adjudication and payment of black lung benefits. Claims filed between December 30, 1969 and June 30, 1973, come within the province of the Secretary of Health, Education & Welfare. Claims arising between July 1, 1973 and December 31, 1973, fall to the Secretary of Labor. Claims filed on and after January 1, 1974, are processed and paid via the applicable state workmen's compensation law, if approved by the Secretary of Labor. In lieu of an approved state program, the Secretary of Labor is charged with adjudicating the claims, but payment is the responsibility of the coal mine operators. 30 U.S.C. §§ 931–941 (1970 & Supp. V 1975); *Usery v. Turner Elkhorn Mining Co., supra* at 8–10, 96 S.Ct. at 2889.

**3.** For example, appellant sought to invoke the statutory presumption provided in 30 U.S.C. § 921(c)(4) (1970 & Supp. V 1975), which states in full:

if a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's, his widow's, his child's, his parent's, his brother's, his sister's, or his dependent's claim under this subchapter and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection, and if other evidence demonstrates the existence of a *totally disabling* respiratory or

pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis. In the case of a living miner, a wife's affidavit may not be used by itself to establish the presumption. The Secretary shall not apply all or a portion of the requirement of this paragraph that the miner work in an underground mine where he determines that conditions of a miner's employment in a coal mine other than an underground mine were substantially similar to conditions in an underground mine. The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine. (emphasis supplied).

**4.** The Supreme Court has defined substantial evidence as

more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

subsequent readings by two different radiologists refuted that finding.

Appellant was examined by two physicians in 1973 who diagnosed pneumoconiosis, but they performed no tests, basing their opinions solely on observations of appellant in light of his medical history. Both doctors concluded that appellant was unable to work in a coal mine environment.

■ Appellant also underwent two pulmonary function tests.[5] The first, taken in December of 1972, recorded claimant's height as 71 inches, his forced expiratory volume in one second ($FEV_1$) as 2.7 liters, and his maximum breathing capacity (MBC) as 75 liters per minute. These values together do not meet even the liberal interim criteria for total disability established by the Secretary's regulations. 20 C.F.R. § 410.490(b)(1)(ii). In the second test,[6] taken in November of 1974, appellant recorded values of 1.8 liters ($FEV_1$) and 59 liters per minute (MVV). These values meet both the interim criteria and the stricter permanent criteria set forth in 20 C.F.R. § 410.424. Pneumoconiosis is a progressive illness, but it is far from clear

whether the appellant could have met the Secretary's disability criteria as of the crucial cut-off date, June 30, 1973. In any event, pulmonary function test results do not conclusively establish total disability. A claimant's work record may rebut the clinical evidence. 20 C.F.R. §§ 410.-412(a)(1), 410.426, and 410.490(c)(1).

Since leaving the mines permanently in 1957, appellant has worked as a machine repairman, a welder, a millwright, and a carpenter. In these capacities, appellant often utilized skills gained in the mines.[7] At the time of his administrative hearing in early May of 1974, appellant was retired and receiving social security benefits. Concurrently, he was employed by a construction company. He indicated that his only real work limitation was a ceiling on outside income imposed as a requirement for social security benefits. Indeed, in the week preceding his hearing, appellant had worked forty-eight hours helping to operate an industrial machine.[8]

■ Appellant's own evidence established his employment capacity. Considering his age, education, and work experience, the

5. A pulmonary function test is designed to measure the degree to which breathing is obstructed. The subject is asked to inhale and exhale as hard as possible. A record is made of maximum breathing capacity (MBC or MVV) and forced expiratory volume ($FEV_1$). The values obtained are then correlated with the subject's height in order to determine the extent of dysfunction.

6. Counsel for appellant insists that the administrative law judge erred in not considering the second pulmonary function test. It is difficult to understand how the administrative law judge can be faulted when the hearing was held and a decision was rendered before appellant had the test performed. In any event, the Appeals Council made the test part of the record before adopting the administrative law judge's decision as the final decision of the Secretary. Indeed, the Appeals Council specifically referred to the test in noting the evidence which it considered in denying appellant's claim. *See Hunley v. Weinberger,* 403 F.Supp. 374, 376 (E.D.Tenn. 1975). This distinguishes the present case from those in which medical evidence produced after the June 30, 1973 jurisdictional cut-off date was not considered. *See, e.g., Ingram v. Califano,* 547 F.2d 904 (5th Cir. 1977); *Begley v. Mathews,* 544 F.2d 1345 (6th Cir. 1976). For present purposes, it is enough

to note that even given the probative value of the second pulmonary function test, there is still substantial evidence to support the Secretary's denial of benefits. *Compare Humphreville v. Mathews, supra,* at 351.

7. For example, appellant has frequently relied on the knowledge of heavy machinery which he acquired while a mine worker:

Appellant: Well, I just learned when I started in the mines, tear a mine machine up, overhauled a mining machine and that's the way I started.
Judge Jandt (ALJ): In other words, skills that you acquired in the mines in your work you were able to translate somewhat setting up rollers and so forth in industry, is that right?
Appellant: Yes.

8. Appellant's testimony clearly indicates that his ability to work at a variety of gainful tasks extended well beyond the June 30, 1973 cut-off date:

Judge Jandt: * * * Would I be correct in assuming that since you have been retired and receiving these benefits that you have worked off and on at odd jobs, as I understand, right at the maximum figure or just under it?

job held by appellant as late as the spring of 1974 was gainful and comparable to his work in the mines. 20 C.F.R. §§ 410.-412(a)(1), 410.426, and 410.490(c)(1). Thus, he was not totally disabled within the meaning of the amended Act. Other courts have reached the same result where claimants engaged regularly in non-sedentary labor after leaving the mines. *See, e.g., Brock v. Weinberger*, 405 F.Supp. 1329 (W.D.Ark. 1975) (truck driver); *Hunley v. Weinberger*, 403 F.Supp. 374 (E.D.Tenn. 1975) (farmer and tavern operator).

It is appellant's admitted ability to work that distinguishes this case from our recent decisions in *Bozwich v. Mathews, supra,*[9] and *Humphreville v. Mathews, supra.* In *Bozwich*, total disability was established, albeit without the benefit of clinical evidence, on a showing that the claimant was completely unable to work. Thus, the court held that the statutory presumption of § 921(c)(4) was available. The statutory presumption was not available in the present case, however, because the Secretary found that the appellant was not totally disabled on or before the June 30, 1973 jurisdictional cut-off date. Unlike *Humphreville, supra*, where the record was unclear regarding the claimant's disability, *id.* at 350, in the present case there is sufficient, uncontroverted evidence that appellant was capable of and was pursuing gainful employment comparable to his work in the mines on June 30, 1973. In sum, we are satisfied that the record as a whole fully demonstrates the correctness of the district court's conclusion that there was substantial evidence to support the Secretary's decision.

Finally, appellant contends, for the first time in this court, that he was prejudiced by his failure to have counsel present at the administrative hearing. We disagree. Appellant was advised in the written notice of hearing, and was again informed orally by the administrative law judge at the outset of the hearing, of his right to be represented by an attorney. Appellant clearly recognized his right to counsel, but chose to represent himself with the aid of his son. The latter, a sales manager, was present at the hearing, as was appellant's wife. Although appellant is a man of limited formal education, the record demonstrates that he is intelligent, knowledgeable, and experienced. His waiver of the right to counsel was considered and deliberate. Mindful of appellant's position, the administrative law judge admitted all the evidence appellant submitted, and otherwise conducted a full and fair inquiry into the facts. Absent a clear showing of prejudice or unfairness which can be attributed to appellant's lack of counsel, a remand is unwarranted. *Goodman v. Richardson*, 448 F.2d 388, 389 (5th Cir. 1971); *Cross v. Finch*, 427 F.2d 406, 408–09 (5th Cir. 1970); *Domozik v. Cohen*, 413 F.2d 5, 9 (3d Cir. 1969); *Poe v. Weinberger*, 403 F.Supp. 312, 315–16 (N.D.W.Va. 1975).

The record in the present case completely derogates the notion that appellant suffered any prejudice from lack of counsel at the administrative hearing. Moreover, appellant's attorney neglected to raise the issue before the district court. Consequently, the claim of prejudice must be and is reject-

Appellant: Well, it wouldn't be odd jobs. I was working for this company where I worked for about four or five years. * * *
&ast; &ast; &ast; &ast; &ast; &ast;
Judge Jandt: What was your job there?
Appellant: Well, I helped _ _ _ they had these big machines, two guys run that. I used to have to help them and they handle like iron, a piece of iron, put it in a saw and cut it off and then they got delivering to do. It was just everything.
Judge Jandt: A man of all work?
Appellant: Yes, a man of all work.
Judge Jandt: And you still work out there?
Appellant: Yes.

&ast; &ast; &ast; &ast; &ast; &ast;
Judge Jandt: Forty-hour week?
Appellant: Well, no, they work nine hours a day. I just worked 48' [sic] last week.
&ast; &ast; &ast; &ast; &ast; &ast;
Judge Jandt: You work just enough to stay under the amount to keep you under social security?
Appellant: Yes, I do.

9. The Honorable William C. Hanson, Chief Judge, United States District Court for the Southern District of Iowa, who reversed the Secretary in *Bozwich, supra*, is the same judge who affirmed the Secretary in the instant case.

ed. The judgment of the district court is affirmed.