**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOHN STILTNER,

Petitioner,

v.

ISLAND CREEK COAL COMPANY;

No. 95-1192

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR,

Respondents.

On Petition for Review of an Order
of the Benefits Review Board.
(93-0461-BLA)

Argued: March 8, 1996

Decided: June 7, 1996

Before HAMILTON and WILLIAMS, Circuit Judges, and
WILLIAMS, Senior United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Williams wrote the majority
opinion, in which Judge Hamilton joined. Senior Judge Williams
wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Lawrence Lee Moise, III, VINYARD & MOISE, P.C.,
Abingdon, Virginia, for Petitioner. Douglas Allan Smoot, JACKSON
& KELLY, Charleston, West Virginia, for Respondents.

**OPINION**

WILLIAMS, Circuit Judge:

In this appeal, we must decide whether substantial evidence supports the Administrative Law Judge's (ALJ) conclusion that the sole cause of John E. Stiltner's total disability was his history of cigarette smoking. Because we find substantial evidence does support the ALJ's decision to deny benefits under the Black Lung Benefits Act (the Act), 30 U.S.C.A. §§ 901-45 (West 1986 & Supp. 1995), we affirm.

I.

Now seventy-seven years old, Stiltner worked as an underground coal miner for approximately forty years until 1979. During his last ten years as a miner, he worked for Island Creek Coal Company (Island Creek). Concurrent with his coal mine employment, Stiltner smoked one-half to one pack of cigarettes a day for thirty-seven years until 1980, excluding a seven-year hiatus between the ages of thirty-four and forty-one. About one year before he stopped working, Stiltner began to experience shortness of breath, which made walking and working difficult for him.

Stiltner filed a claim for benefits under the Act in 1979. Since then, his case has developed a lengthy record and concomitant procedural history. After conducting an exhaustive review of the extensive record, the ALJ denied benefits, concluding in a detailed, twenty-page decision that the sole cause of Stiltner's disability was his history of cigarette smoking. Affirming, the BRB found substantial supporting evidence in five medical reports submitted by Island Creek that rule out Stiltner's coal mine employment as a contributing factor to his disability. Stiltner now appeals, claiming that those medical reports are flawed for various reasons, undermining their credibility as a matter of law. After carefully reviewing the pertinent regulations and the record, we find that the ALJ's denial of benefits is in accordance with law and supported by substantial evidence.

II.

A miner is entitled to disability benefits under the Act "if (a) he or she is totally disabled, (b) the disability was caused, at least in part,

2

by pneumoconiosis, and (c) the disability arose out of coal mine employment." Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 141 (1987). Under 20 C.F.R. § 727.203(a)(2) (1995), a miner is entitled to a presumption that all three conditions are present if he "engaged in coal mine employment for at least 10 years . . . [and] if . . . [v]entilatory studies establish the presence of a chronic respiratory or pulmonary disease . . . as demonstrated by values which are equal to [those shown in the chart]." If he qualifies for this interim presumption, the miner will be presumed to be totally disabled due to pneumoconiosis.

Under § 727.203(b)(3), however, the presumption is rebutted if "[t]he evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment." This rebuttal provision requires the employer to rule out any causal relationship between the miner's disability and his coal mine employment by a preponderance of the evidence, a standard we call the Massey rebuttal standard. See Bethlehem Mines Corp. v. Massey, 736 F.2d 120, 123 (4th Cir. 1984). Importantly, § 727.203(b)(3) does not require the employer to controvert the evidence that the miner suffers from pneumoconiosis or that he is totally disabled. Even if those conditions exist, the miner is not entitled to benefits if there is no causal relationship between the miner's total disability and his coal mine employment.

The ALJ found that Stiltner qualified for the interim presumption of total disability due to pneumoconiosis under § 727.203(a)(2). Supporting the interim presumption, the ALJ found as a fact that Stiltner's pulmonary function studies (PFS) established that he had a chronic respiratory or pulmonary disease, a finding which Island Creek did not contest. After reviewing a vast amount of conflicting medical evidence, however, the ALJ ultimately concluded that the sole cause of Stiltner's disability was his history of cigarette smoking. The ALJ therefore ruled that Island Creek had successfully rebutted the interim presumption that pneumoconiosis caused Stiltner's disability.

In concluding that Island Creek's evidence ruled out a causal relationship between Stiltner's disability and coal mine employment, the ALJ was persuaded primarily by the medical opinions of Drs. Renn

3

and Fino. Both physicians are board-certified in internal medicine and in the subspecialty of pulmonary disease. Consistent with the factual findings underlying the interim presumption, Drs. Renn and Fino, like the other three doctors whose opinions Stiltner questions here, agreed that Stiltner suffered from a chronic obstructive lung disease resulting in Stiltner's disability. The physicians each concluded that Stiltner's chronic obstructive impairment was due to cigarette smoking rather than coal dust exposure.

Stiltner now claims that these medical opinions are not credible as a matter of law and thus cannot constitute substantial evidence supporting the denial of benefits. Independently reviewing the record as in the place of the BRB, see Toler v. Eastern Associated Coal Co., 43 F.3d 109, 114 (4th Cir. 1995), we conclude that the ALJ's findings are supported by substantial evidence and are in accordance with law, see Jewell Smokeless Coal Corp. v. Street, 42 F.3d 241, 243 (4th Cir. 1994). We shall assess in turn each of Stiltner's challenges to the five medical opinions.

A.

Stiltner first argues that Dr. Renn's opinion must be discredited because he incorrectly assumed that Stiltner had never exhibited crackles, an indication of a restrictive ventilatory defect unrelated to smoking and characteristic of pneumoconiosis. Stiltner notes that three other physicians, Drs. Robinette, Abernathy, and Sargent, recorded the presence of crackles. We note first that, despite their observance of crackles, Drs. Abernathy and Sargent did not report a restrictive impairment, only an obstructive one, which they opined did not arise from Stiltner's coal mine employment. In addition, Dr. Renn based his conclusion that Stiltner's disability was due solely to smoking-induced obstruction on much more than just the absence of crackles. He examined Stiltner's medical history, PFS, blood gas tests, and x-ray readings performed by other physicians and diagnosed chronic bronchitis with no restriction.

Dr. Renn's belief that Stiltner had never displayed crackles may have been incorrect, but it did not diminish the reliability of his ultimate conclusion.[1] This is not a case where the medical opinion found-

_____

[1] Dr. Renn's initial medical report in 1987, which also opined that exposure to coal mine dust did not contribute to Stiltner's chronic bron-

ers because of an erroneous assumption that contradicts the factual findings underlying the interim presumption.[2] To the contrary, Dr. Renn's opinion identifies the chronic respiratory disease supporting the interim presumption under § 727.203(a)(2) in this case.[3] Moreover, Dr. Renn did not assume facts in conflict with the Black Lung Benefits Act, which also would have cast doubt on his opinion.[4]

Stiltner generally contends that most of Island Creek's experts theorize that "coal dust exposure does not give rise to an obstructive impairment." (Appellant's Br. at 29.) While we have rejected as inim-

_____

chitis, in fact noted that three physicians previously had "auscultated basilar crackles" in Stiltner. (J.A. at 583.) The ALJ, however, relied on Dr. Renn's testimony in a deposition taken four years later in which he stated that Stiltner's records did not reveal "physical findings which are sometimes associated with coal workers' pneumoconiosis" such as crackles. (J.A. at 567.)

**2** **See Curry v. Beatrice Pocahontas Coal Co.**, 67 F.3d 517, 521 (4th Cir. 1995) (discounting physicians' opinions because they assumed the miner did not have pneumoconiosis when in fact ALJ invoked interim presumption based on x-ray evidence of pneumoconiosis under § 727.203(a)(1)); Grigg v. Director, OWCP , 28 F.3d 416, 419 (4th Cir. 1994) (same).

**3** **Cf. Dehue Coal Co. v. Ballard** , 65 F.3d 1189, 1194 (4th Cir. 1995) (holding physicians' opinions were probative because they were consistent with ALJ's findings that the miner suffered from simple pneumoconiosis and was totally disabled; they simply ruled out any causal relationship between the miner's disability and pneumoconiosis); Hobbs v. Clinchfield Coal Co., 45 F.3d 819, 821-22 (4th Cir. 1995) (noting that physicians' opinions were consistent with the ALJ's conclusion that miner suffered from legal pneumoconiosis because physicians agreed that miner exhibited respiratory impairment due to coal dust inhalation; they concluded however that pneumoconiosis was not a contributing cause of the miner's total disability).

**4** **See Warth v. Southern Ohio Coal Co.**, 60 F.3d 173, 174-75 (4th Cir. 1995) (holding that physicians' opinions were undermined by an erroneous assumption that coal mine employment cannot cause obstructive lung disorders); Thorn v. Itmann Coal Co., 3 F.3d 713, 719 (4th Cir. 1993) (questioning conclusions of physician who erroneously assumed that simple pneumoconiosis cannot cause total disability).

5

ical to the Act the premise that "obstructive disorders cannot be caused by coal-mine employment," Warth v. Southern Ohio Coal Co., 60 F.3d 173, 174 (4th Cir. 1995), the medical opinions challenged here made no such claim. In Warth, we held that chronic obstructive pulmonary disease (COPD) falls within the regulatory definition of pneumoconiosis if the COPD is significantly related to or aggravated by coal mine employment. Id. at 175. We therefore cautioned ALJs not to rely on medical opinions that rule out coal mine employment as a causal factor based on the erroneous assumption that pneumoconiosis causes a purely restrictive form of impairment, thereby eliminating the possibility that coal dust exposure also can cause COPD.

Unlike the medical opinions we examined in Warth , none of the challenged physicians here assumed that coal mine employment can never cause COPD;[5] they merely opined that Stiltner likely would have exhibited a restrictive impairment in addition to COPD, if coal dust exposure were a factor.[6] Moreover, the doctors based their opin-

_____

[5] For example, Dr. Endres-Bercher, who examined Stiltner and reviewed his medical history, testified in deposition that chronic bronchitis can have

> two possible etiologies [coal dust exposure and tobacco smoke exposure]. . . . If we are going to say [Stiltner] has had enough coal dust exposure to cause chronic bronchitis, one would expect to see some restrictive changes take place, because coal dust exposure results in a restrictive lung disease and in interstitial lung problem. And he doesn't demonstrate that. He has no diminution of lung volumes.

(J.A. at 459.) (emphasis added). In addition, Dr. Sargent observed in his report that coal workers' pneumoconiosis, "causes a mixed obstructive and restrictive ventilatory impairment, which is not the type of impairment that Stiltner is suffering from. Cigarette smoking causes a pure obstructive ventilatory impairment, which is the type of impairment Mr. Stiltner is showing." (J.A. at 618.)

[6] The dissent misreads these physicians' findings, stating that they "assume that unless some restrictive impairment is present, the miner's lung disease is not related to his coal mine employment." (Dissenting op. at 13 (emphasis added).) Only this characterization of the record could produce the sort of error in the medical reports that the dissent searches in vain to find in order to grant black lung benefits to Stiltner.

6

ions not only on the absence of a restrictive impairment, but also on their review of Stiltner's entire medical history, **7** including his PFS, blood gas tests, and x-ray readings.**8** In view of these thorough and amply supported medical opinions, we cannot conclude that the ALJ's finding of a (b)(3) rebuttal was not well reasoned.

Contrary to the dissent's concern that our holding in effect over-rules Warth, we conclude that Warth does not preclude consideration of opinions such as Dr. Renn's that are based on a thorough review of all of the medical evidence, rather than an assumption that

_____

**7** That history includes more than thirty years of smoking at least one-half to one pack of cigarettes a day, a history the ALJ described as a "significant cigarette smoking exposure," (J.A. at 25), but which the dissent characterizes as Stiltner's "sporadic light use of tobacco." (Dissenting op. at 12, n.1).

**8** For example, Dr. Fino explained in his report that the reversibility of Stiltner's disease weighed against a finding that coal mine employment caused it:

> Coal workers' pneumoconiosis is a disease which causes fixed fibrosis in the lungs. This fixed fibrosis does not improve with medications. Therefore, if [Stiltner's] lung disease was reversible, then it would be reasonable to conclude that it has nothing to do with coal workers' pneumoconiosis. Although[Stiltner] did have a significant exposure to coal dust based on the history in the medical file, he also was a very heavy cigarette smoker. If indeed [he] had obstructive lung disease that was reversible, then the obvious etiology would be cigarette smoking. There is no other evidence to support a diagnosis of coal workers' pneumoconiosis. Specifically the numerous B readings on the chest x-rays were negative. Also, [Stiltner's] lung disease regardless of its etiology is minimal at best considering the fact that he has essentially normal pulmonary functions, and his arterial blood gases with rest and exercise do not show significant hypoxemia, arterial desaturation with exercise, nor a significant impairment in oxygen transfer with exercise.

(J.A. at 976.)

7

contravenes the Act and regulations.**9** The dissent would "disregard the opinions of Island Creek's physicians" and grant black lung benefit. (Dissenting op. at 15.) This disposition would ignore the vast body of medical evidence ruling out coal mine employment as a factor, and it can be explained only by sympathy for an aging former miner who has pressed his claim over many years. The evidence compels us to conclude, however, that the ALJ did not err in crediting the conclusion of Dr. Renn and others that coal mine employment neither caused nor aggravated Stiltner's purely obstructive lung disease; therefore we find that Dr. Renn's opinion constitutes substantial evidence ruling out causation under the <u>Massey</u> rebuttal standard.

B.

For similar reasons, Dr. Fino's opinion also survives Stiltner's challenge. Stiltner claims that Dr. Fino's opinion is not credible because he believed that Stiltner was free of cough with mucus production for two years after he left the coal mines. In fact, Stiltner contends, three physicians recorded that he complained of a cough beginning three to four years before he stopped working.**10** However, Dr. Fino did not base his opinion solely on the absence of a history

_____

**9** In addition to <u>Warth</u>, the dissent relies on dicta appearing in a footnote of <u>Eagle v. Armco, Inc.</u>, 943 F.2d 509, 511 n.2 (4th Cir. 1991), to support its conclusion that the instant medical reports contravene the Act and regulations. (Dissenting op. at 12.) In <u>Eagle</u>, we cited a provision of the Act that defines pneumoconiosis as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." <u>Id.</u> (citing 30 U.S.C. § 902(b)). Based on this language, we commented that a physician's opinion that non-smoking miners "show no evidence of obstruction from coal mine employment" was bizarre. <u>Id.</u> This comment was dicta because it was not essential to the holdings in <u>Eagle</u> regarding the nature of the miner's work and a physician's familiarity with the miner's duties. <u>Id.</u> at 511-12. While this dicta in <u>Eagle</u> may "underpin[ ] the holding of the Court in <u>Warth</u>," (Dissenting op. at 13, n.2), <u>Warth</u> did not instill "full precedential value," <u>id.</u>, in the comment in <u>Eagle</u>. Not only does the comment therefore remain dicta, but it does not bear on our holding today.
**10** Notably, of the three physicians, Dr. Abernathy alone indicated that Stiltner complained of a productive cough, and Dr. Abernathy concluded that Stiltner did not suffer from coal worker's pneumoconiosis.

8

of coughing. Like Dr. Renn, Dr. Fino reviewed Stiltner's medical records, PFS, blood gas tests, and x-rays, recognized the presence of a mild obstructive ventilatory abnormality, and concluded that it was absolutely unrelated to Stiltner's coal mine employment.

Stiltner does not explain why evidence concerning his history of coughing necessarily should have altered Dr. Fino's medical opinion. Moreover, Stiltner has not expressed any other reason to discredit Dr. Fino's opinion. Like the alleged factual flaw in Dr. Renn's report, Dr. Fino's error, if any, regarding Stiltner's cough history does not reflect the sort of unacceptable factual assumption that would compel rejection of his ultimate conclusion. Cf. Curry, 67 F.3d at 521; Warth, 60 F.3d at 174-75. In any event, the ALJ in fact considered Stiltner's cough evidence, and he nevertheless credited the views of Drs. Renn and Fino that coal dust exposure did not lead to Stiltner's impairment. We defer to the ALJ's evaluation of the proper weight to accord conflicting medical opinions. See Doss v. Director, OWCP, 53 F.3d 654, 658 (4th Cir. 1995). Because the medical opinions of Drs. Renn and Fino were not unworthy of the weight the ALJ ascribed to them, and both attribute Stiltner's disability entirely to his smoking history, we conclude that substantial evidence supports the finding that Stiltner's total disability did not arise in whole or in part out of his coal mine employment.

C.

Stiltner also challenges the credibility of several other physicians' opinions to which the ALJ alluded in his decision and on which the BRB relied in affirming the denial of benefits. Like Drs. Renn and Fino, Drs. Endres-Bercher, Abernathy, and Sargent, all examining physicians who are board-certified in internal medicine, concluded that Stiltner's impairment was unrelated to his coal mine employment. Stiltner contends the opinions of Drs. Endres-Bercher, Abernathy, and Sargent are flawed and thus cannot constitute substantial evidence supporting a determination that Island Creek satisfied the Massey rebuttal standard as a matter of law.

Stiltner claims first that Dr. Endres-Bercher's opinion was equivocal on the issue of whether coal mine employment caused Stiltner's disability. On the contrary, Dr. Endres-Bercher's conclusion was

9

firm; he found that Stiltner suffered from early small airways disease and chronic bronchitis resulting from tobacco smoke exposure. He also rejected any hint of a restrictive disease process, strongly suggesting that Stiltner's smoking-induced bronchitis was solely responsible for his disability. The opinion of Dr. Endres-Bercher thus constitutes probative evidence supporting Island Creek's rebuttal of the interim presumption.

D.

Next, Stiltner contends that Dr. Abernathy failed to state an opinion about the cause of Stiltner's disability. The record, however, reflects Dr. Abernathy's clear conclusion that coronary artery disease alone caused Stiltner's disability. Like Drs. Endres-Bercher and Sargent, Dr. Abernathy examined Stiltner, conducted PFS and blood gas testing, and diagnosed him with chronic bronchitis. Dr. Abernathy noted a history of productive cough and the presence of crackles, but did not report a restrictive disease process. Concluding that Stiltner's disability was due to coronary artery disease, Dr. Abernathy indeed stated his opinion that coal mine employment was not a contributing factor to Stiltner's disability.

E.

Lastly, Stiltner contends that Dr. Sargent premised his conclusions on the erroneous belief that pneumoconiosis is disabling only if x-rays are positive for pneumoconiosis. Cf. Thorn v. Itmann Coal Co., 3 F.3d 713, 719 (4th Cir. 1993) (questioning the probative value of the opinion of a physician whose "stated credo is that simple pneumoconiosis does not `as a rule' cause total disability"). The record, however, shows that Dr. Sargent considered not only the negative x-rays, but also Stiltner's PFS and his own physical examination of Stiltner in concluding that he suffered from a mild obstructive ventilatory impairment, but not a restrictive impairment. Like Dr. Abernathy, Dr. Sargent detected crackles but found no other indication of a restrictive impairment. While acknowledging that a combination obstructive and restrictive impairment may result from coal dust inhalation, Dr. Sargent opined that Stiltner's disability was due entirely to a smoking-induced obstructive defect, a finding consistent with those of at least four other physicians.

10

III.

In conclusion, there were no defects in the opinions of Drs. Renn, Fino, Endres-Bercher, Abernathy, and Sargent that required the ALJ to discount their credibility. While Stiltner produced numerous medical opinions in support of his claim for benefits, the ALJ resolved the questions raised by the conflicting medical evidence about the cause of Stiltner's obstructive disorder in Island Creek's favor, a conclusion that we must oblige so long as substantial evidence supports it. See Hobbs v. Clinchfield Coal Co., 45 F.3d 819, 820 (4th Cir. 1995). Indeed, the five opinions challenged here constitute substantial evidence in support of the denial of benefits because they rule out coal mine employment as a contributing factor to Stiltner's total disability under § 727.203(b)(3).[11] Island Creek thus met its ultimate burden of proving that Stiltner's coal mine employment did not contribute to his disability. See Mullins Coal Co., 484 U.S. at 141. Having concluded that the ALJ did not err as a matter of law in crediting the opinions of doctors who diagnosed an obstructive lung disease but attributed it solely to Stiltner's lengthy history of cigarette smoking, we affirm the denial of benefits.

AFFIRMED

WILLIAMS, Senior District Judge, dissenting:

I respectfully dissent from the majority's decision affirming the finding by the Benefits Review Board that John Stiltner is not entitled to benefits under the Black Lung Benefits Act (the"Act"), 30 U.S.C. §§ 901-945. While I do not believe in any event that substantial evidence supports the finding of the Benefits Review Board that Island Creek Coal Company rebutted under 20 C.F.R. § 727.203(b)(3) the presumption under 20 C.F.R. § 727.203(a)(2) that Stiltner is entitled

_____

[11] Because this is so, we shall not address Stiltner's remaining challenges to the opinions of other physicians on grounds similar to those explained above. Nor shall we consider his argument, not addressed by the BRB, that the ALJ erred in his alternative holding that Island Creek also rebutted the interim presumption under another provision of the same regulation, 20 C.F.R. § 727.203(b)(4) (1995).

to benefits,**1** I write to address a more serious flaw in the majority's opinion: it so narrowly construes <u>Warth v. Southern Ohio Coal Co.</u>, 60 F.3d 173 (4th Cir. 1995), as to in effect overrule it.

In <u>Warth</u>, the examining physician "based his opinion that Warth does not suffer from pneumoconiosis on the assumption that obstructive disorders cannot be caused by coal-mine employment." <u>Id.</u> at 174. This Court held that such an assumption was erroneous under the Act. The Act defines pneumoconiosis as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b); <u>accord</u> 20 C.F.R. § 718.201 ("For purposes of the Act, <u>pneumoconiosis</u> means a chronic dust disease of the lung and its sequelae . . . arising out of coal mine employment. . . . For purposes of this definition, a disease `arising out of coal mine employment' includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." (Italics in original)). "Chronic obstructive lung disease thus is encompassed within the definition of pneumoconiosis for purposes of entitlement to Black Lung benefits." <u>Warth</u>, 60 F.3d at 175. Consequently, any opinion to the effect that chronic obstructive lung disease cannot be caused by breathing coal mine dust "must be considered bizarre in view of a [sic] Congress' explicit finding to the contrary." <u>Eagle v. Armco, Inc.</u>, 943 F.2d 509, 511 n.2 (4th Cir. 1991).**2**

_____

**1** In particular, the majority opinion virtually ignores Stiltner's forty years of continuous work in the coal mines, preferring to focus on his sporadic light use of tobacco.

**2** The majority opinion attacks this dissent's reliance upon footnote 2 of <u>Eagle</u> on the grounds that the footnote constitutes dicta. <u>See</u> Majority op. at 8 n.9. Dicta are "[e]xpressions in court's opinion which go beyond the facts before court and therefore are individual views of author of opinion and not binding in subsequent cases as legal precedent." Black's Law Dictionary 454 (6th ed. 1990). Footnote 2 of <u>Eagle</u> does not go beyond the facts of the case; on the contrary, it quotes the medical opinion of the employer's expert and explains why its underlying assumption is mistaken. Given that <u>Eagle</u> reversed the Benefits Review Boards finding of a denial of benefits, one cannot definitively say that footnote 2 comprises an "[o]pinion[ ] of a judge which do[es] not embody the reso-

12

In the instant case, Stiltner argues that Island Creek's physicians have operated under this "bizarre" assumption. The majority insists that "the medical opinions challenged here made no such claim." Majority op. at 6. Yet the majority opinion itself shows otherwise. In discussing the medical opinions in the record, the majority writes that Island Creek's doctors "opined that Stiltner likely would have exhibited a restrictive impairment in addition to [chronic obstructive pulmonary disease], if coal dust exposure were a factor." Majority op. at 6. In other words, these opinions assume that unless some restrictive impairment is present, the miner's lung disease is not related to his coal mine employment.

Warth precludes exactly this assumption. The majority reads Warth as merely stating that the presence of an obstructive pulmonary impairment does not foreclose coal mine employment as a causal factor in the miner's lung disease. Under the majority's interpretation of Warth, the only opinions that may not be considered are those which assume that "pneumoconiosis causes a purely restrictive form of impairment." Majority op. at 6. This reading of Warth is overly narrow, and at odds with its clear import. As noted above, the statutory

_____

lution or determination of the specific case before the court." Id. Consequently, footnote 2 of Eagle does not embody dicta.

Even if footnote 2 of Eagle were dicta at the time it was written, it now underpins the holding of the Court in Warth. Eagle was the only case cited by the Court in Warth in holding that the assumption that coal mine employment cannot cause chronic obstructive pulmonary disease underlying the physicians' opinions in that case was "erroneous." Warth, 60 F.3d at 175. And as that holding constitutes the central (and only) proposition for which Warth stands, footnote 2 of Eagle is now unquestionably the law of this circuit and has full precedential value.

Finally, the majority opinion asserts that footnote 2 of Eagle "does not bear on our holding today." Majority op. at 8 n.9. If one follows the reasoning of the majority that Warth has no meaning at all, that statement is true. If, on the other hand, as this dissent argues, Warth stands for the proposition that the absence of an accompanying restrictive impairment with chronic obstructive pulmonary disease does not rebut the presumption that the miner has pneumoconiosis, then footnote 2 of Eagle does not merely bear on the holding today: it is dispositive.

13

language and the accompanying regulations both define pneumoconiosis to include all pulmonary impairments, restrictive or otherwise. Requiring a restrictive impairment to be present in order to find the existence of pneumoconiosis runs counter to the broad definition of pneumoconiosis enacted by Congress. Allowing consideration of opinions which assume that a restrictive impairment is always present in pneumoconiosis makes the inclusion of obstructive pulmonary impairments within the scope of the statutory definition mere surplusage, in violation of the canon of statutory construction that "`all words and provisions of statutes are intended to have meaning and are to be given effect.'" West Virginia Div. of the Izaak Walton League of America v. Butz, 522 F.2d 945, 948 (4th Cir. 1975) (quoting Wilderness Soc'y v. Morton, 479 F.2d 842, 846 (D.C. Cir. 1973), cert. denied, 411 U.S. 917 (1973)); accord Virginia v. Browner, 1996 WL 138507 (4th Cir. Mar. 26, 1996), at *5 ("A court should not -- and we will not -- construe a statute in a manner that reduces some of its terms to mere surplusage."); George Hyman Constr. Co. v. Occupational Safety and Health Review Commn, 582 F.2d 834, 841 (4th Cir. 1978) ("traditional axiom that courts should not interpret statutes in a manner that renders terms of the statute superfluous").

The only interpretation of the statute which gives full effect to the broad scope of its definition of pneumoconiosis, and the interpretation adopted by this Court in Warth, is that medical opinions which require some additional pulmonary impairment to be present in addition to chronic obstructive pulmonary disease in order for the COPD to be related to coal mine employment must be disregarded as contrary to statutory intent. Congress has found that obstructive pulmonary disease can be caused by coal mine employment and written the statute accordingly. See Eagle at 511 n.2. Our job is to interpret and enforce that statute, not to determine whether it comports with the latest medical knowledge. Put another way, as a Court we are obliged to follow the legal, not the medical, definition of pneumoconiosis.

This dissent does not require a physician to view the presence of chronic obstructive pulmonary disease as an absolute indicator that coal mine employment caused the miners disability. Following Warth, all this dissent says is that the mere fact that the coal miners pulmonary impairment is obstructive in nature is not a sufficient basis for a physician to conclude that it is unrelated to his coal mine employ-

14

ment. Under this interpretation of Warth, the employer may still rebut the presumption of entitlement to benefits by showing that the miner's lung disease is from a source other than his work in a coal mine, i.e., from cigarette smoking. All the employer may not do is use the obstructive nature of the pulmonary impairment to so rebut. And that is because Congress, in defining pneumoconiosis, included obstructive pulmonary impairments.

This case squarely puts the question. Does Warth merely stand for the proposition that the presence of an obstructive pulmonary impairment does not rule out pneumoconiosis? Or does Warth stand for the proposition that the presence of an obstructive pulmonary impairment by itself, without the concurrent presence of another type of pulmonary impairment, does not rule out pneumoconiosis? The majority adopts the former interpretation, ignoring the broad statutory definition of pneumoconiosis and so limiting Warth as to in effect overrule it. Cf. Norfolk & Western Ry. v. Director, OWCP, 5 F.3d 777, 779 (4th Cir. 1993) (one three-judge panel may not overrule a prior published opinion of another three-judge panel). I find that the latter interpretation gives full effect to the express statutory language, follows the intent of Congress, and represents the clear import of Warth.

For the foregoing reasons, I would, following Warth, disregard the opinions of Island Creek's physicians, find that the decision of the Benefits Review Board that Island Creek has rebutted under 20 C.F.R. § 727.203(b)(3) the presumption of entitlement to benefits is not supported by substantial evidence, and remand the case to the Benefits Review Board for consideration of the Administrative Law Judge's finding of rebuttal under 20 C.F.R. § 727.203(b)(4).

I dissent.**3**

_____

**3** I am also dismayed at the delay in the final adjudication of this case. Congress set up an administrative system to evaluate black lung claims so that they would be handled in an expeditious and inexpensive manner. See Humphreville v. Mathews, 560 F.2d 347, 348 (8th Cir. 1977). Yet in this case, the original claim was filed on November 8, 1979, and only reaches final resolution (perhaps) with this opinion over sixteen years later. Those entitled to benefits under a statutory scheme enacted by Congress deserve better.

15